2013-1380

# United States Court of Appeals for the Federal Circuit

## VEHICLE IP, LLC,

*Plaintiff-Appellant,*

v.

## AT&T MOBILITY, LLC and TELENAV, INC.,

*Defendants-Appellees,*

**and**

## CELLCO PARTNERSHIP, NETWORKS IN MOTION, INC., and TELECOMMUNICATION SYSTEMS, INC.,

*Defendants-Appellees.*

**Appeal from the United States District Court for the District of Delaware in Case No. 09-1007, Judge Leonard P. Stark**

**NON-CONFIDENTIAL BRIEF OF PLAINTIFF-APPELLANT VEHICLE IP, LLC**

*William R. Woodford*
*Michael J. Kane*
*John A. Dragseth*
**Fish & Richardson P.C.**
**3200 RBC Plaza**
**60 South Sixth Street**
**Minneapolis, MN 55402**
**Phone: 612-335-5070**

*Geoff D. Biegler*
**Fish & Richardson P.C.**
**12390 El Camino Real**
**San Diego, CA 92130**
**Phone: 858-678-5070**

**August 5, 2013**            *Attorneys for Plaintiff-Appellant*

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Vehicle IP, LLC _____ v. AT&T Mobility, LLC _____

No. 13-1380 _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellant _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Vehicle IP, LLC

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Vehicle IP, LLC

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Vehicle Safety & Compliance, LLC

_____

4.   ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Fish & Richardson P.C., Thomas L. Halkowski, Michael J. Kane, William R. Woodford, John A. Dragseth, Geoffrey D. Biegler

_____

August 5, 2013 _____              /s/ Geoffrey D. Biegler _____
                  Date                                    Signature of counsel

                                              Geoffrey D. Biegler _____
                                                  Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF RELATED CASES ...................................................1

STATEMENT OF JURISDICTION..................................................1

STATEMENT OF THE ISSUES..................................................1

STATEMENT OF THE CASE.................................................2

STATEMENT OF THE FACTS ...........................................5

    I.    The '377 Patent:  Improving Determination of Vehicle Time of Arrival Using a Central System That Communicates with Mobile Units.................................................5

    II.    The '377 Prosecution:  the Inventors Accede to an Interpretation of "Expected Time of Arrival" That Includes Remaining Time...............9

    III.    The Accused Products.......................................11

    IV.    This Litigation .................................................15

        A.    Claim Construction:  Importing Limitations into the Claims...15

        B.    Summary Judgment:  Deciding Disputed Fact Issues and Expanding the Doctrine of Vitiation.......................................19

SUMMARY OF THE ARGUMENT .................................................23

ARGUMENT .................................................24

    I.    Standard of Review .................................................24

    II.    The District Court Incorrectly Limited the '377 Patent Claims to Particular Types of Time and Way Points .........................................25

        A.    The District Court Erred In Limiting "Time" to "Time of Day" .................................................25

## <u>TABLE OF CONTENTS (continued)</u>

<div align="right"><u>Page(s)</u></div>

B.    The '377 Patent Recites Way Points Generally, and Thus Covers Both Intermediate and Final Destination Way Points. .............34

C.    The District Court's Constructions of "Way Point" and "Expected Time of Arrival" Are Inconsistent with Each Other42

III.    The District Court Erred in Granting Summary Judgment of No Literal Infringement Under Its Incorrect Constructions ................................43

A.    Certain Versions of the Accused Products Meet the Claim Limitations, as Construed .........................................................44

B.    The District Court Incorrectly Concluded that the Accused Products Do Not Literally Infringe..........................................48

IV.    The District Court Committed Reversible Error in Finding Vitiation of "Expected Time of Arrival" ..................................................................51

1.    The District Court Improperly Found Vitiation Based Solely on the Literal Scope of the Claims And Wholly Divorced from the Insubstantial Differences Analysis..........51

2.    The District Court Did Not Find that Remaining Time Would Vitiate a Limitation in Its Entirety— Only Part of the Court's Claim Construction......................55

3.    There Is Not a Substantial Difference Between Determining "Remaining Travel Time" and "Time of Day" in the Context of the Asserted Claims......................................................................................57

## TABLE OF CONTENTS (continued)

Page(s)

CONCLUSION ................................................................................................... 59

## CONFIDENTIAL MATERIAL OMITTED

The materials omitted on pages 12-15, 20, 44-47, 49, 51, 57, 58 discuss the internal design of Appellees' systems that they designated "Highly Confidential – Technical" under the protective order entered in the district court action.

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*,
  414 Fed. App'x 294 (Fed. Cir. 2011) ..........................................................58, 59

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................24

*Bausch & Lomb, Inc. v. Procter & Gamble Co.*,
  414 F. 3d 1342 (Fed. Cir. 2005) ..........................................................32

*Brilliant Instruments, Inc. v. GuideTech,*
  LLC, 707 F.3d 1342 (Fed. Cir. 2013)............................52, 53, 54, 55

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ..........................................................39

*Cordis Corp. v. Boston Scientific Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009) ..........................................................56

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  559 F.3d 1308 (Fed. Cir. 2009) ..........................................................24

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ..........................................24

*D.M.I., Inc. v. Deere & Co.*,
  755 F.2d 1570 (Fed. Cir. 1985) ......................................28, 30, 53, 54

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012) ......................................52, 53, 54, 56

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  469 F.3d 1005 (Fed. Cir. 2006) ..............................................52, 55

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*,
  149 F.3d 1309 (Fed. Cir. 1998) ..........................................................52

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005) ........................................................31

*Grober v. Mako Prods., Inc.*,
686 F.3d 1335 (Fed. Cir. 2012) ........................................................24

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
500 Fed. App'x 951 (Fed. Cir. Mar. 15, 2013).................................24

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
474 F.3d 1323 (Fed. Cir. 2007) ........................................................41

*Nicini v. Morra*,
212 F.3d 798 (3d Cir. 2000) (*en banc*) ............................................24

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
326 F.3d 1255 (Fed. Cir. 2003) ........................................................28

*Verizon Servs. Corp. v. Vonoage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007) ........................................................40

*Voda v. Cordis Corp.*,
536 F.3d 1311 (Fed. Cir. 2008) ........................................................57

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)......................................................................52, 56

## **TABLE OF AUTHORITIES (continued)**

**Page(s)**

**STATUTES**

28 U.S.C. § 1295(a)(1)..................................................................................1

28 U.S.C. §§ 1331 and 1338(a)....................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a)..................................................................................24

Fed Cir. Rule 47.5 ......................................................................................1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant states that (a) no other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court; and (b) it is aware of no other case pending in this or another court that will directly affect or be directly affected by the Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

The district court granted summary judgment on all outstanding issues in an order dated April 10, 2013. [A2-15] The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The court entered judgment on April 19, 2013, and that judgment was final and disposed of all parties' claims. [A1] Vehicle IP timely filed its Notice of Appeal on April 29, 2013. [A34-37] This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in construing the term "time," in the context of the claim phrase "expected time of arrival," to be limited to particular type of time (time of day), and to exclude a remaining travel time.

2.     Whether the district court erred in construing "way point" to encompass only intermediate way points, and to exclude a final way point.

3.    Whether the district court erred in granting summary judgment of no literal infringement where there was substantial evidence that certain accused products determined an expected time of arrival in a time of day format at a way point that was not the final destination, which met all claim limitations, even under the district court's constructions.

4.    Whether the district court erred in granting summary judgment of no doctrine of equivalents infringement under a theory that such infringement would vitiate a parenthetical excluding "remaining time" from the district court's claim construction—without considering whether "remaining time" might be equivalent to "time of day" in the context of the claim and without finding that it would vitiate any limitation in the claims.

## STATEMENT OF THE CASE

This is a patent appeal.  Appellant Vehicle IP filed suit against Appellees on December 31, 2009, for the infringement of U.S. Patent 5,987,377.  [A68-97]  The '377 patent relates to a system for vehicles that gives a more accurate determination of an expected time of arrival for a final way point of a trip that also includes one or more intermediate way points.  [*See* A16-33]  The system compares the vehicle position to the way points to provide an updated expected time of arrival as the vehicle changes position during the trip.  [*See id.*]  During the

2

*Markman* process, Vehicle IP explained that "time" in the claim term "expected time of arrival" and the term "way point" should both receive their general, normal meanings consistent with both the specification and prosecution history. [*E.g.*, A622, 639-43; A1170, 1185-86]

In a December 12, 2011, Memorandum Opinion, however, the district court construed the terms by reading limitations into each. The district court followed Appellees' lead in limiting the term "time" to be only "time of day," so that the claims would cover—at least literally—only a system that determined the expected time of arrival in terms of time of day format (e.g., "your ETA is 8:15 a.m.") but not in remaining time format (e.g., "your ETA is 15 minutes"). [A1452, 1459-61] Importantly, the district court added a negative parenthetical to its construction that excluded remaining time, i.e., the district court construed the term as "time of day at which the vehicle is expected to arrive somewhere (***and not remaining travel time***)." [A1452, 1459 (emphasis added)] The district court also limited the claim term "way point"—which is a particular point of a route—to only "intermediate" way points (and not final way points), resulting in a claim that would determine when a driver would get to every point in a trip except the one that mattered most—the final destination. [A1452, 1461-64]

After the district court construed the claims, Appellees moved for summary judgment of no infringement, even though certain of Appellees' products

determine an ETA for intermediate way points. These products express time in a remaining time format, and Vehicle IP presented evidence that the difference between the "remaining time" and the "time of day" formats was insubstantial in the context of the invention (i.e., that there is little fundamental difference between telling someone, at 1:30 p.m., that "we'll be there at 2:00 p.m." and "we'll be there in 30 minutes").

In an April 10, 2013 Order, the district court granted summary judgment of no infringement, both literally and under the doctrine of equivalents. [A2-15] In finding no literal infringement, the district court decided disputed factual issues regarding systems that determine an ETA in a time of day format for locations that the accused products themselves identify as along the way to the final destination, which satisfies the district court's claim constructions. For the doctrine of equivalents, the district court's ruling was based not on a finding of technical differences between time of day and remaining time, but on supposed vitiation of the negative parenthetical that the district court unnecessarily added to its claim construction (as opposed, for example, to vitiation of a claim limitation). [A2, 8-14] That ruling led to the present appeal.

## STATEMENT OF THE FACTS

**I.    The '377 Patent:  Improving Determination of Vehicle Time of Arrival Using a Central System That Communicates with Mobile Units**

The invention of the '377 patent relates to vehicle navigation systems and how those systems determine the expected time of arrival of a vehicle at a destination or intermediate point as the vehicle travels through the trip.  Around the time of the invention of the '377 patent, typical vehicle navigation systems were self-contained and located in the vehicle.  This approach had several shortcomings, including a high equipment cost for each vehicle, additional cost for updating equipment and information in the vehicle as it became outdated, and an inability to obtain information during the route, such as information related to traffic or weather.  [*See* A16, 23]  Around the same time, some systems were being developed that shifted the functions of the mobile unit to a central service in a remote location, but those systems had problems in calculating an accurate time of arrival for a particular vehicle and depended (to their detriment in both performance and cost) on maintaining communication between the central service and the mobile units.  [*See id.*]

Vehicle IP's '377 patent overcomes these problems by using a central platform (called a "dispatch" in the patent) that processes navigation information (called "destination information") and communicates that information to mobile devices in vehicles via, for example, the cellular telephone network.  [A16, 23-

5

24(2:66-3:12)]  The '377 system improves the accuracy of arrival time calculations by including in the destination information a "plurality of way points" that identify points of reference along a trip.  The mobile unit in the vehicle uses those way points in conjunction with its GPS (or other positioning technology) to repeatedly compute an expected arrival time ("ETA") based on the vehicle's progress along a route.  [A16, 25(6:22-60)]

Figure 1 shows an example of such a system, with dispatch (20) and mobile unit (42) communicating through a mobile telecommunications switching office (MTSO, 32) and transmitter site (34):



*FIG. 1*

[A16, 18(Fig. 1), 25(5:5-29)]   In this system, the process of determining an

expected time of arrival begins with the dispatch generating destination information.  [A16, 23(2:66-3:7), 24(4:56-59)]  The destination information may include destinations, route information, traffic and weather information, and the like.  [A16, 24(3:1-7)]  A mobile unit in a vehicle receives the destination information, determines the vehicle's current position, and determines ETA for a particular destination.  [A16, 23(1:62-65), 25(5:5-16 & 5:53-6:7)]  While Figure 1 shows a single destination, Figure 2 (below) provides an example of multiple destinations C, D, and E along the route:



FIG. 2

[A16, 23(1:55-57, 2:18-20), 26(8:28-33), 18(Figs. 1 & 2)]

The patent discusses two particular uses for way points.  First, the way points can be used to determine if the vehicle has left a planned route.  [A16,

27(9:2-32)]    For example, destinations C and D in Figure 2 can be used to make such a determination if the vehicle has not passed through them.  [A16, 27(9:2-32)] Second, the use of a "plurality" of way points can improve ETA calculation because the system can use the way point to determine travel distances and times that better match the actual route, rather than simply determining the straight-line distance from the beginning to the end of a trip. [A16, 27(9:33-42)]  The '377 system thus uses "intermediate points between the position of the vehicle and the destination in order to more accurately calculate actual road distance" and, consequently, to more accurately calculate arrival time at the destination.  [A16, 27(9:37-39)]   The patent emphasizes the importance of ETA for the final destination (as that is what a user most cares about) and notes that the mobile unit "need not calculate an expected time of arrival at [intermediate] way points." [A16, 27(9:39-43)]

Claim 1 expresses such a system as a combination of the dispatch that generates destination information that specifies a "plurality of way points," a communications link, and a mobile unit to determine "the expected time of arrival of the vehicle at a way point identified by the destination information":

1. A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, *the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information* and wherein the communications link comprises a cellular telephone network.

[A16, 29-30]

The invention as-claimed is about how the overall system is arranged to provide better estimates, not about the format in which those estimates are reported.  Nothing in the claim involves, let alone requires, computing or displaying the time in a particular format.  And nothing prevents the claim from covering the "way point" that would naturally be of most interest to a user—the destination of the trip—and in fact the claim explicitly notes that the way points are specified by the "destination information."  Neither the claim nor the remainder of the specification identifies, either explicitly or implicitly, the invention as relying on the use of only a particular format for expressing time or particular types of way points (and excluding the most natural way point).

## II.    The '377 Prosecution:  the Inventors Accede to an Interpretation of "Expected Time of Arrival" That Includes Remaining Time

The '377 patent issued from a continuation of U.S. Patent No. 5,724,243.

That patent has claims that also recite an "expected time of arrival," and the examiner during prosecution of that patent found such a feature in prior art U.S. Patent No. 5,444,444 to Ross.  [A2094-103]

Ross discloses a system that compares the expected time until a particular delivery occurs with a predetermined time interval in order to timely notify the recipient of the impending delivery—e.g., if the notice is supposed to be 30 minutes in advance of delivery, the system sends the notice when the calculated ETA is 30 minutes or less.  Thus, time of arrival in Ross is expressed as a *time interval*, not a time of day:

> The position of the carrier is compared with a predetermined delivery location for the recipient.  A *time interval is computed* for the carrier to *move to the delivery or pick up location*.  When the time interval is less than a *predetermined time interval*, a signal is communicated to the recipient to provide reasonable advance notice of the pending unscheduled delivery or pickup of the item.
>
> * * * *
>
> The controller then determines an *estimated time of arrival* at that delivery location.  In determining the time of arrival for each delivery location, the controller accounts for the distance and time required to travel between the two locations and accounts for the intervening deliveries and estimated time to make these deliveries.  The controller thereby determines an estimated time of arrival for the particular delivery.  If the *period* for the *estimated time of arrival* is greater than a predetermined interval, the controller repeats the analysis for the next deliver in the sequence.  If the estimated time of arrival is less than the predetermined interval, the controller initiates notification of arrival for delivery.

[A2094, 2098-99(2:36-41 & 4:60-5:6)]

While Ross speaks of an "estimated" time of arrival and the Vehicle IP claims (both in the parent '243 patent and the '377 patent-in-suit) speak of an "expected" time of arrival, it is a distinction without a difference, because each term simply indicates that the time cannot be exact because it is impossible to determine a vehicle's future speed.    The Examiner also saw there to be no difference, as he matched Ross's teaching of a "time interval" for an "estimated time of arrival" of a delivery to the "expected time of arrival" feature of the then-pending claims.    The Applicants did not disagree, such as by arguing that "time" meant only "time of day" and that Ross did not disclose such a feature.    Rather, they distinguished the claims based on Ross not disclosing an "appointment time," which was required by all claims of the '243 application, because the Ross patent focused on **_unscheduled_** deliveries.    [A2986, 3104-23]    In short, the Applicants claimed "time" generally, the examiner applied the term generally (both with respect to the format and with respect to estimated/expected time), and the Applicants never disagreed.

## III.    The Accused Products

There are two groups of Appellees in this case:  the Telenav Appellees[1] and the TCS Appellees.[2]  Their products are largely similar for purposes of the issues on appeal but have minor relevant differences, as explained below.

---

[1] AT&T Mobility LLC and Telenav Inc.

The accused products are navigation systems that use software applications operating on mobile devices and remote computer servers that communicate with the mobile devices through a cellular network.  [A1767, 1771(¶ 13); A1943, 1945-47(¶¶ 4, 9-10)]  Drivers can send requests for navigation instructions from their mobile phones and receive trip information to get their vehicles from origins to destinations.   [A1767, 1772(¶ 15); A2229, 2245-48; A2576, 2579-81 & 2585-86(¶¶ 9, 10, 13, 17); A3441, 3456-57(59:21-64:3), 3465(94:7-95:10)]  Both sets of products break a route into smaller sections, Confidential Material Omitted

Confidential Material Omitted[3]   There was no dispute below that the endpoints of these sections are "intermediate points" along the way to a destination that define the route of travel and aid in calculating time of arrival.  [A2104, 2128-29(91:2-96:5); A2195, 2209, 2219-20; A2229, 2255-56; A2261, 2279(71:9-72:7); A2500, 2513(¶ 27); A3441, 3450(34:14-35:3, 37:6-15); A2576, 2585(¶ 17), 2595-96(¶¶ 38-39); A2298, 2301-04, 2309, 2313; A3441, 3456 (60:6-22)]

---

[2]  TeleCommunication Systems, Inc./Networks In Motion, Inc. and Cellco Partnership.

[3]  The TCS products break the route into Confidential Material Omitted Confidential Material Omitted                    [A2195, 2209, 2219-20; A2229, 2255-56; A2298, 2301-04, 2309, 2313]  The Telenav products use Confidential Material Om Confidential Material Omitted Confidential Material Omitted                                [A3441, 3456(60:6-22); A2576, 2585-86(¶ 17)]  We refer to each of these collectively as "portions" of a route.

While some of the products ultimately ***display*** time in a "time of day" format, they all ***determine*** arrival times using "remaining time." [A2104, 2142-43(149:2-151:6), 2154(195:15-196:21); A2261, 2279-2280(71:25-77:10); A2504-07(¶¶ 12-13, 16); A3441, 3460-62(74:19-77:19, 80:16-85:1); A2576, 2587-88(¶¶ 21-22)] For example, to determine time to an intermediate point, Confidential Material Omitted

Confidential Material Omitted

Confidential Material Omitted

Confidential Material Omitted    A2104, 2142-43(146:2-11, 149:13-150:7, 150:13-151:1); A2261, 2279-80(71:9-24, 73:6-76:11); A2500, 2504-05(¶¶ 11-12); A3441, 3460-62(74:19-77:19, 80:16-85:1); A2576, 2587-88 (¶¶ 21-22)] To determine time to a destination, Confidential Material Omitted

Confidential Material Omitted

Confidential Material Omitted. [A2104, 2143-44(150:16-151:6, 153:16-154:22); A2261, 2280-81(76:13-17, 77:11-78:23); A2500, 2505(¶ 13); A3341, 3460-63(77:20-78:7, 84:20-86:23); A2576, 2587-88(¶¶ 21-22)] Some products (the "Travel-Time-Builds" of the TCS Appellees) leave the arrival time in a remaining time format that is ultimately converted Confidential Material Omitted to hours/minutes for the purpose of displaying the ETA to the user, while others (the "Clock-Time-Builds" of the TCS and Telenav Appellees) convert Confidential Material Omitted to a time-of-day

format (e.g., 10:45 p.m.).[4]  [A2104, 2146(163:5-165:23); A2261, 2283-84(86:19-88:8, 89:22-91:22); A3441, 3461-63(79:8-23, 86:24-88:7); A2576, 2588(¶ 23); A2104, 2145-46(160:9-165:23), 2153-54(193:16-197:19), 2155(198:6-199:4), 2156-57(205:25-208:10), 2158-59(213:4-214:5); A2500, 2506-07(¶¶ 16-17), 2514-15(¶¶ 29-31); A3441, 3461(78:15-79:23), 3463(86:3-88:7), 3477-78(144:12-146:19), 3479-80(151:2-157:21), A2576, 2588-89(¶¶ 24-25), 2596-97(¶¶ 40-41)]

The products also allow a user to identify and select an intermediate point while traveling to a destination via the TCS "Find Nearby" feature and the Telenav "Search Along" feature.  [A2104, 2130-31(101:11-105:6) & A2500, 2507-10(¶¶ 18-19) (TCS products); A3441, 3457-59(64:4-72:17) & A2576, 2582-85(¶¶ 14-16) (Telenav products)]  These extra features are relevant to the appeal because they identify locations that are not the "final destination" referenced in the district court's construction of "way point," but rather an intermediate destination along the way.  With the features, when a user selects such an intermediate point (e.g., to find a filling station or coffee shop while traveling), Confidential Material Omitted

Confidential Material Omitted the mobile device determines an arrival time for that location.  [A2104, 2130-31(101:11-105:6); A2500, 2507-10(¶¶ 18-19); A3441, 3457-59(64:4-72:17); A2576, 2582-85(¶¶ 14-16)]  After the user

---

[4] Appellees identified the products that fall into the Clock-Time-Build and Travel-Time-Build categories in declarations submitted below.  [*See* A1767, 1775-76 (for TCS) & A1942, 1946 (for Telenav)]

has driven to the intermediate point, the products prompt the driver to "Resume Trip" to the main destination, or the driver may retrieve the destination from recent places to continue navigating to the main destination. [A2104, 2130-31(101:11-105:6); A2500, 2507-10(¶¶ 18-19); A3441, 3457-59(64:4-72:17); A2576, 2582-85(¶¶ 14-16)]

The Telenav products also let a user select "intermediate" destinations before the driver begins the trip through a web application—a feature that is relevant because, again, these intermediate destinations are not excluded in the district court's construction of "way point." Specifically, Telenav's website allows users to plan a trip consisting of multiple destinations or stops, such as a route from points "A" to "D" through intermediate destinations "B" and "C." [A3441, 3463-64(89:7-91:16); A2576, 2579-81(¶ 11); A3492-93] After planning a trip, Confidential

Confidential Material Omitted

Confidential the driver may then select any destination to which to navigate—including intermediate destinations. [A3441, 3464-65(91:17-95:10); A2576, 2579-81(¶ 11); *see also* A3441, 3465-66(97:22-99:25); A2576, 2581(¶ 12)]

## IV.    This Litigation

### A.    Claim Construction:  Importing Limitations into the Claims

Although the parties disputed a number of terms during the *Markman* process, the district court's summary judgment ultimately hinged on two:  "time"

in the context of the phrase "expected time of arrival," and "way point." Vehicle IP reasoned that the terms should receive their ordinary meanings consistent with their general use in the claims, written description, and prosecution history, as explained above. Based on that approach, Vehicle IP proposed that "expected time of arrival" be construed to mean "an indication of time when the vehicle is expected to arrive" and that "way point" be construed to mean "a geographical point of reference or destination."

### 1.    "Time"

The central battle for "time" was whether it should be limited to particular examples in the patent that used a "time of day" format, or whether it should instead receive a more general meaning not limited to a particular format for presenting time. Appellees focused on the discussion in the '377 specification about using appointment times and comparing those appointment times to expected times of arrival—what the Appellees characterized as a "key feature of the '377 Patent," even though the patent itself lays no such weight on the example, nor includes it in any of the independent claims. [*See* A571] Appellees asserted that a time comparison could not be made unless both times were in a time-of-day format but they provided no support for this proposition other than attorney argument. And they argued that the way that time was displayed in a single figure (Figure 4), which also related to appointment times, mandated that "time" be limited to the

precise format of that figure. Vehicle IP, in contrast, noted that Appellees had no basis in the claim language for the narrowing, that the specification contained no disclaimer or other statements that could be relevant under this Court's case law to import a limitation to the claims, and that the patent Examiner's application of a prior art "remaining time" reference (and the Applicants' acquiescence in that application) all point to a broader, plain meaning construction.

The district agreed with Appellees' "comparison" argument—though it too failed to cite any evidence that a mobile device could only compare two times of day or to explain why an embodiment in the dependent claims of the patent narrowed the broad term "time" in the independent claims. [A1459-61] None of the independent claims recite appointment times, comparisons of time, or any other such feature. And the majority of references to "time" in the specification are agnostic to any particular format (i.e., time of day or remaining time). Importantly, although the district court never found a disclaimer or estoppel regarding remaining time, it added a parenthetical to its construction that stated the term was "not remaining travel time." [A1459]

### 2.    "Way point"

In arguing for "way point," Appellees skipped the natural starting point that a user would be most concerned with the arrival time to one way point in particular—the destination. They instead focused on the following passage from

the specification, which discusses the benefits of using more than just the final way point (a "plurality" of way points), and actually shows that when the patentees wanted to refer only to *intermediate* way points, they said so explicitly:

> Besides reducing out-of-route mileage, the use of *intermediate way points* improves the calculation of expected time of arrival. Specifically, the actual distance between the position of vehicle 40 and the destination may not be the road distance. ***Way points* may be used** *as intermediate points* between the position of vehicle 40 and the destination in order to more accurately calculate actual road distance.

[A574 (citing A27(9:33-39)) (additional emphasis added)]

Again, the district court agreed and actually went further even than what one of the Appellee groups requested—holding that "the language of the patent *excludes* a final destination from the definition of a waypoint." [A1462 (emphasis added)] The court centered its reasoning on the fact that "in the specification, the use of way points is discussed only for determining whether a vehicle is out of route and for more accurate calculation of actual road distance to destination." [A1462] What the court then missed, however, was that the entire point of more accurately calculating the distance to the destination is to better estimate the time to the destination—the final way point.

The district court's constructions of "expected time of arrival" and "way point," taken together, created an even more absurd result. The patent specifically states, for intermediate way points, that "the mobile unit need not calculate an

expected time of arrival." [A16, 27(9:41-43)] Nonetheless, under the district court's constructions, the claimed system must not only determine expected time of arrival at intermediate way points, which will never be communicated to the user, but must do so in a particular format (i.e., time of day). Moreover, after putting so much weight on the comparison of appointment times at destinations to limit the "expected time of arrival" to a particular format, the district court's construction for "way points" excluded the final destinations that would be associated with appointment times.

### B.    Summary Judgment:   Deciding Disputed Fact Issues and Expanding the Doctrine of Vitiation

The district court's claim constructions led to its subsequent decision on summary judgment. In opposition to Appellees' motions for summary judgment, Vehicle IP explained that some of the accused products literally infringed the asserted claims because they determined an expected time of arrival, in time of day format, at "intermediate destinations" under the Court's constructions. [A2049-55; A2554; A2556-58] Vehicle IP further noted that all of the products infringed at least under the doctrine of equivalents because they determined an expected time of arrival, albeit in remaining time format, at the so-called "final destination" and because determining an expected time of arrival in remaining time format was insubstantially different from determining an expected time of arrival in time of day format (the goal of both being to provide an indication of when the destination

will be reached, and a phrase like "in 15 minutes" doing that just as well as "at 2 p.m."). [A2055-61; A2551-53; A2558-62]

With virtually no analysis, the district court first found that no product literally infringed. The Telenav multi-destination and "Search Along" features did not infringe because Confidential Material Omitted

Confidential Material Omitted                                                   ." [A13] But in concluding that every destination in the Accused Products is apparently "final," the court did not address the fact that the asserted claims are directed to the vehicle's trip, not each individual segment or "route" within the trip. The district court (and Appellees) confirmed that the claims are directed to the "trip" in the agreed-upon construction for the phrase "determine in response to the vehicle position," which immediately precedes the phrase "expected time of arrival" in the claims. [A1467-68 (construing the phrase to mean "determine based on the vehicle position and update as the vehicle changes position *throughout the trip*") (emphasis added)] The district court similarly concluded that the "Find Nearby" feature of the TCS Clock Time products did not infringe because any destinations selected by the user through those features were "the single final destination," not an "intermediate point on the way." [A2, 9-10]

The court went even further with the doctrine of equivalents. The products undeniably determined expected time of arrival for intermediate points, and the

question was simply whether they had a component equivalent to the element:

> mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information.

[See A39]  The products matched most of this element exactly (e.g., they made a determination in response to vehicle position, and they did so at a way point identified by destination information).  Vehicle IP submitted extensive technical evidence, including expert testimony, that there would be little difference, in the claimed system, between two mobile units that shared every feature of the above limitation with the slight difference that one determined expected time of arrival in time of day format after first determining expected time of arrival as a remaining time.  [*E.g.*, A2500-543; A2576-608]  The evidence squared with common sense: that time of day and remaining time are two interchangeable ways of conveying when something is expected to happen, no different than miles/hour and meters/second are two interchangeable ways of conveying measures of speed.  Appellees, in contrast, submitted no evidence, expert or otherwise, indicating that there were significant differences between those two formats of time.

The district court, rather than finding that there truly was any practical technical difference, instead latched onto the negative limitation in its claim construction and reasoned that limitation (not any claim element) would be vitiated by a finding of equivalents:

> Here, as a matter of law, no reasonable juror could conclude that 'remaining travel time' is equivalent to the 'expected time of arrival' limitation, given the Court's construction of that limitation as, in part, 'not remaining travel time.'

[A2, 11]  The court did not even mention Vehicle IP's evidence or acknowledge the fact—raised by Vehicle IP in briefing and at argument—that claim construction determines only what the claims *literally* cover, not what is or is not an "equivalent" feature.   For that reason, the district court either was wrong at *Markman* to include a negative limitation that would further preclude access to the doctrine of equivalents or was wrong on summary judgment to *ipso facto* extend the reach of that negative limitation.

This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court first erred by reading limitations into two otherwise clear and broad claim terms. The term "time" covers both time of day and remaining time, and the district court never identified a disavowal of that natural broad scope. To the contrary, the specification shows that expected times of arrival must be first **determined** as a remaining time, and the prosecution history shows that the Examiner equated remaining time with "expected time of arrival." Similarly, the ordinary meaning of "way points" is not limited to intermediate way points, and neither the patent nor its prosecution history indicate the patentee intended such a limitation. The district court's two constructions, taken together, cannot be correct as they lead to absurd results contrary to the disclosure of the patent.

The district court made two additional errors in granting summary judgment of no infringement. First, it improperly decided that all destinations in the accused systems were "final" destinations—so that they were excluded from the court's construction of way point—even though Vehicle IP presented fact and expert evidence that certain destinations were "intermediate." With respect to the doctrine of equivalents, the court also erred in multiple ways by finding that a feature of its claim construction, but not any element of the claims, was vitiated, and by failing to analyze whether there were actual technical differences between the claim element and the accused products.

23

## ARGUMENT

### I.    Standard of Review

This Court reviews a grant of summary judgment under regional circuit law, and the Third Circuit provides *de novo* review to such an issue.  *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012); *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (*en banc*).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Claim construction is an issue of law this Court reviews *de novo*.[5]  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (*en banc*).  Infringement is a question of fact, so that "on appeal from a grant of summary judgment of noninfringement, [the Court] must determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

---

[5] This Court is considering the standard of review for claim construction *en banc* in *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 500 Fed. App'x 951, 951-52 (Fed. Cir. Mar. 15, 2013).  Any decision in that case will not likely affect this appeal because the district court here based its ruling solely on the intrinsic record, and did not consider "findings of historical fact" like those that the appellant in *Lighting Ballast* urges be reviewed for clear error.

## II.    The District Court Incorrectly Limited the '377 Patent Claims to Particular Types of Time and Way Points

### A.    The District Court Erred In Limiting "Time" to "Time of Day"

The district court wrongly construed the broad term "time" as limited to time presented in a particular format, and to exclude a "remaining time" format. The natural meaning of "time" is broad, the claim language that modifies that term does not dictate format, and the district court never identified a disavowal of that natural broad scope. To the contrary, the specification and the prosecution history show that "time" should be understood broadly in the context of the invention.

Because there was no dispute below that all accused products determine an "expected time of arrival" in remaining time format to both intermediate points and to destinations, the district court's grant of summary judgment should be reversed with respect to all of the accused products.

#### 1.    The Plain Claim Language of "Time" is Broad and Covers Both Time of Day and Remaining Time

The dispute regarding "expected time of arrival" centers on the word "time." Appellees cannot dispute that the plain and ordinary meaning of "time" encompasses more than just the particular format of "time of day." As a matter of common sense, if someone was asked what time they were expected to arrive, the answers "in 30 minutes" and "at 2 o'clock" could be equally acceptable. Both answers are based on the current time—the only difference is that in the latter example, one adds the current and remaining time before relaying the information.

25

Consistent with this broad common-sense meaning, dictionaries from the time of the invention provide broad definitions for "time" such as "the measured or measurable period during which an action, process, or condition exists or continues"[6] or "a finite extent of continued existence; e.g., the interval between two events, or the period during which an action or state continues; a period referred to in some way."[7]   Indeed, the fact that the district court even needed to add the modifier "of day" to time demonstrates that "time," by itself, is understood to mean something more than "time of day."

The language surrounding the term "time" further indicates that it should not be limited to a particular format.   Specifically, this Court has held that a claim construction cannot add a narrowing modifier to a claim term when that modifier does not exist in the claim, *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998), and none of the recited modifiers has anything to do with the format for the time.   The modifier "expected" simply indicates that the time is a prediction and could change based on the unknowable, future speed and direction of the vehicle.   And the modifier "of arrival" simply sets the baseline for calculating time (a future event of "arrival"), but says nothing about its format. Again, it is notable that the patent includes particular modifiers, but absolutely

---

[6] A3875, 3877.
[7] A3886, 3888.

nothing relating to the format for expressing the time.[8]  Because the inventors did not chose to modify "time," the district court was wrong to add its own modifier to that claim language.

The broad meaning of "time" is consistent with the other language of the patent claims.  The claims focus on the way that the dispatch and the mobile units interact to define the trip and how the mobile unit associates vehicle positions with that information to better determine an expected time of arrival.  Nothing about the clamed invention suggests that the inventors were focused on expressing time in any particular manner, or that they viewed time format as something that distinguished their invention from the prior art.  Rather, a broad construction of expected time of arrival is consistent with the patent's stated goal of the invention: to provide a more accurate expected time of arrival.  *Id*. at 1250 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

While Appellees argued below that "time" must be "time of day" because certain dependent claims require the step of "comparing" ETA to an "appointment

---

[8] Even Appellees could not argue below that "time" when used in the context of modifiers "expected" and "of arrival" had a common meaning limited to a particular format.  Instead, Appellees submitted dictionary definitions of the term "estimated time of arrival," which they admitted at oral argument was "generally the same," [A1362(75:3-15)], that simply indicated that "estimated time of arrival" as "the predicted time of reaching a destination or way point," but did not set a format for expressing that time.  [A1106, 1113(n.4)]

time," that analysis is backward.  [A506, 571-72; A1106, 1115-16].  Specifically, even assuming that the comparison can be made using only "time of day" format, this Court's case law suggests that such a format is ***not*** required in the claims that do not recite any comparison.  *See, e.g.*, *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1268 (Fed. Cir. 2003) (holding that "the district court erred in importing limitations of the specification and of narrower or dependent claims into broad, independent claims" by requiring "filter bed" and "filter media" to have more than one layer as required by the dependent claims and described in an embodiment of the specification); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985) ("[W]here some claims are broad and others are narrow, the narrow claim limitations cannot be read into the broad" to escape infringement.). Analogously, if a patent recites a "car" in an independent claim, and a dependent claim requires the car to be capable of going more than 200mph, the broad term "car" would not be construed as "sports car," even through the dependent claim might cover only sports cars as a practical matter because of the 200mph requirement.  And, in any event, Appellees supported their technical point only with attorney argument, whereas Vehicle IP's expert, Dr. Steven Goldberg, explained that a mobile unit could, in fact, easily and routinely compare ETA to an "appointment time" regardless of the format of those "times."  [A2500, 2516(¶ 33); A2576, 2598(¶¶ 43-44)]   Thus, Appellees "appointment time" argument was

wrong from both a legal and technical perspective.

## 2. The Written Description Indicates That "Time" Is Broad

Nothing in the written description limits the broad meaning of "time."  Like the claims, the specification shows that the format of the expected "time" is not a focus of the invention.  Instead, the specification focuses on the use of particular client-server architecture, way points, and the association of vehicle positions at the mobile unit with those way points to more accurately determine expected "time."  [*E.g.*, A16, 23(1:54-62, 2:11-18, 2:59-66), 24(3:9-24), 25(6:8-30, 6:40-60), 27(9:5-43)]  Perhaps for that reason, even though it uses the phrase "expected time of arrival" numerous times, the specification never indicates that time must be in any particular format.

The silence of the specification regarding time format is also not surprising because, as the specification explains, a computer processor in the mobile unit calculates expected "time."  [A28(11:19-25)]  Computer-based applications do not process time in a format that is understood by humans, no less in the "time of day" format adopted by the district court.  For instance, in the accused products, the mobile unit processes the current time as an offset in milliseconds from a known reference point, typically January 1, 1970 UTC (Coordinated Universal Time). [A2500, 2506(¶ 16); A2104, 2155-59(199:5-14, 205:25-207:14, 212:24-214:8); A3441, 3463(87:14-24); A2576, 2589(¶ 25), 2597(¶ 41)]  As a result, the format of

"time" is not particularly relevant to the claimed feature of "determining" an expected time of arrival.[9]

Even so, the specification shows that inventors contemplated that the clamed system must first determine the expected remaining *travel time* to a way point and then, if desired, could convert that expected time of arrival into a different format. [A27(10:23-42)]  According to the specification, the inventors' system builds the expected time of arrival in a remaining time format using various time intervals, which the mobile unit adds up to get an expected time of arrival.  [A25(5:53-6:7)] One example in the specification explicitly shows that the first expected time of arrival is determined as a remaining travel time:

> Destination N, shown on line 2 of display, is *five minutes away* from the destination M, the time is not 9:10 a.m., and the operator has just finished repairing the machine, as shown under description column of line 1.  Mobile unit determines the expected time of arrival of vehicle at destination N to be 9:15 a.m.

[A27(10:25-29)]  The same example shows that the ETA can also be expressed as a time of day by simply adding the current time to the ETA determination, but there is no question that the mobile unit must first determine expected time of arrival as a time interval.  [*Id.*]

Appellees and the court focused below on the embodiment of Figure 4 in the

---

[9] Much of the district court's opinion suggests that the court was focused on how time was displayed to a user.  But the claims recite "determining" time, rather than being limited to how the time is ultimately displayed.

patent, which discusses making comparisons with appointment times, but that figure does not support a narrow construction for multiple reasons. First, Figure 4 illustrates the ***display*** of an ETA (i.e., what is shown to the user), whereas the claims are directed to the ***determination*** of an ETA (which happens inside of the mobile unit). None of the claims of the '377 patent even require that the mobile device display the expected time of arrival. Second, Figure 4 is no more than a specific embodiment of the claimed invention, and this Court has been clear that limiting the claims based on examples in the specification requires "words of express manifest exclusion or explicit disclaimers." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (holding that nearly 30 references to a three-blade razor in the specification were insufficient to surrender or exclude a four-blade razor). The examples in the specification of the '377 patent do no come close to meeting that standard, and the district court did not purport to find a statement of exclusion or disclaimer in Figure 4.

### 3. The Prosecution History Confirms the Broad Meaning of "Time" Because the Examiner Rejected Claims Over Prior Art that Disclosed Remaining Time (Not Time of Day)

The prosecution history confirms that the inventors used "time" consistent with its broad ordinary meaning. Specifically, during prosecution of the parent '243 patent, the Examiner rejected the pending claims, which included the term "expected time of arrival," and specifically found that feature disclosed by the

Ross Patent, which explains that the expected time of arrival is calculated as a time interval:

> A ***time interval is computed*** for the carrier to ***move to the delivery or pick up location***. When the time interval is less than a ***predetermined time interval***, a signal is communicated to the recipient to provide reasonable advance notice of the pending unscheduled delivery or pickup of the item.

[A1942, 2098(2:38-43); *see also* A2986, 3093-101; A2094-103]  In rejecting the claims over Ross, the Examiner explicitly found that Ross, in columns 4 and 5, disclosed the "expected time of arrival" element claimed in the '243 patent:

> Ross disclosed the invention substantially as claimed, including . . . in regard to claim 1, means for determining the estimated time of arrival [col. 4] of a delivery vehicle for a carrier. . . Ross provides means whereby the controller determines if the estimated time of arrival is greater than a predetermined interval [col. 5].

[A2986, 3094-96]  The Examiner, presumed to be familiar with the level of skill in art, thus understood "expected time of arrival" to include a time interval.  *See Bausch & Lomb, Inc. v. Procter & Gamble Co.*, 414 F. 3d 1342, 1347 (Fed. Cir. 2005).

The inventors did not disagree with the Examiner and, instead, distinguished Ross on the basis that it did not use appointment times and, thus, did not disclose comparing an expected time of arrival with an appointment time:

> Neither Ross nor Jones disclose, teach, or suggest a mobile unit operable to determine if an expected time of arrival differs from a corresponding appointment time for a destination by more than a predetermined amount, as recited in Applicants' Claim 1.

32

[A2986, 3117]  The inventors further amended all of the claims of the '243 patent to require that the mobile unit be "further operable to determine if the expected time of arrival differs from the corresponding appointment time for the destination by more than a predetermined amount."  [A2986, 3104-14]  Thus, instead of contesting the examiner's understanding of "expected time of arrival" (for instance, by arguing that Ross did not disclose ETA because it only shows remaining time), the inventors acquiesced and distinguished the Ross patent on another basis.

The district court, at Appellees' urging, found this exchange irrelevant because Ross used the term "estimated time of arrival" rather than "expected time of arrival."  [A1452, 1461]  This missed the mark entirely.  First, the **substance** of Ross was being matched to the claim term "expected time of arrival," and that substance was a "remaining time" format, regardless of what label Ross used.  Second, the fact that the Examiner matched something labeled "estimated time of arrival" to claims that recited "expected time of arrival" (and the Applicants' failure to distinguish the two) showed that the terms were synonymous in the context of the claims.  Accordingly, far from containing any type of disclaimer of the broad ordinary meaning of "time," the prosecution history shows that the Patent Office Examiner and the inventors understood "time" to include remaining travel time.

\*\*\*\*\*\*\*\*\*\*\*

Because the claim language supports a broad construction of "time," and because the specification and file history support that broad meaning, Vehicle IP respectfully requests that the Court reverse the district court's construction and adopt Vehicle IP's construction: "an indication of time when the vehicle is expected to arrive." Vehicle IP further respectfully requests that the Court vacate the district court's grant of summary judgment for the accused products, which was based on its incorrect construction.

**B.    The '377 Patent Recites Way Points Generally, and Thus Covers Both Intermediate and Final Destination Way Points.**

The district court also wrongly construed the broad term "way point" to exclude "final" way points. The claims dictate that way points can include all types of way points, not just "intermediate way points." This meaning is confirmed by the specification and by extrinsic sources. Because there was no dispute below that all Clock-Time builds of the accused products determined an "expected time of arrival" to "final" destinations in a time-of-day format, even under the district court's claim construction of "expected time of arrival," the grant of summary judgment should be reversed with respect to Clock-Time builds of the accused products.

### 1.    The Plain Claim Language Is Broad and Covers any Type of Way Point.

The term "way points" appears in all claims of the '377 patent.  The independent claims require that the destination information sent by the dispatch includes "a plurality of way points" and that the mobile unit be capable of determining an expected time of arrival at a way point.  The claim language indicates that "way points" is a broad term that can include any point that a vehicle can travel to during a trip, including both destinations and intermediate points.

First, the claims recite the term "way points" generally, without any narrowing modifier that would limit them to a particular type of way point.  As this Court has noted, "[n]or may we, in the broader situation, add a narrowing modifier before an otherwise general term that stands unmodified in a claim." *Renishaw*, 158 F.3d at 1249.  Thus, at the start, the claims are broad on this point and should not be limited to "intermediate" way points or exclude a "final" way point.

Second, the claims provide that the plurality of way points is included in the ***destination*** information.  [A29]  Unlike the parent '243 patent, which claims the comparison of "destinations" and "appointment times," the claims of the '377 patent never use the term "destinations."  The absence of "destinations" in the '377 claims indicates that "way points" include all types of destinations.  The dependent claims further confirm that way points can include final destinations by stating that way points are compared to appointment times.  [*E.g.*, A30(claim 11)]  The

surrounding claim text thus suggests that way points might include destinations, and provides no indication that certain destinations should be excluded from the term.

Third, the claims recite "a plurality of waypoints," and the patent indicates that the point of having multiple way points is to define the route for a more accurate calculation of expected time of arrival at the destination. [*E.g.*, A26-27(8:34-9:44)] Those multiple way points are better at defining the route than a system that uses only the destination as a way point, and thus looks to distance "as the crow flies," when the route is not such a perfect straight line. [A27(9:5-43)] In order to define the route, the way points must include the destination itself.

Appellees incorrectly asserted below that the inventors used the language "plurality of waypoints" to limit the claims to a multi-destination route. In fact, in the specification, the inventors used the term "plurality of destinations" to describe multi-destination routes but chose not to use that language to claim their invention. [A26(8:28-30)("Fig. 2 illustrates a system for determining expected times of arrival at a plurality of destinations.")] Moreover, if the inventors used "plurality of waypoints" to refer to multiple destinations, why would the claims allow for the system to determine the expected time of arrival to only the intermediate destinations, but not the last destination? Especially when the Figure 4 display Appellees relied on to limit ETA to a particular format shows the ETA at the

"final" destination.  [*See* A19(Fig. 4)]  As explained below, the invention focuses on determining expected time of arrival to destinations.  [*See* A23]  Under the more sensible reading of the claims, the inventors used the phrase "a plurality of way points" to refer to a system that includes at least one destination and at least one intermediate point to allow for the determination of a more accurate expected time of arrival to that destination.

The inventors also chose not to claim "way points" rather than the district court's chosen language, "intermediate way points."  As explained below, the inventors knew the difference between the general term "way points" and the more specific term "intermediate" way points, and could have use that language in their claims.  The inventors chose not to and the district court thus improperly re-wrote the claims to add "intermediate" and change the scope of the claims.  *Renishaw*, 158 F.3d at 1250.

### 2.    The Written Description Supports the Meaning of "Way Points" From the Claims

The specification confirms that "way points" include both destinations and intermediate points leading to those destinations.  As an initial matter, even a cursory read of the specification shows that the most fundamental purpose of the invention is to determine an expected time of arrival at a destination.  For instance, in the "Summary of the Invention" section, the patent states that, in the preferred

embodiment, the mobile unit determines the expected time of arrival at a destination identified by the destination information.  [A23(1:52-65)]

The specification distinguishes between two types of way points: those located at destinations and "intermediate way points."  In the context of improving ETA calculation (which is the focus of the claims), the specification indicates that *intermediate way points* that are located *between* the vehicle and a destination:

> Besides reducing out-of-route mileage, the use of ***intermediate way points*** improves the calculation of expected time of arrival. Specifically, the actual distance between the position of the vehicle and the destination may not be the road distance.  Way points may be used as ***intermediate points between the position of the vehicle and the destination*** in order to more accurately calculate the road distance.

[A27(9:33-39)(emphasis added)]  Thus, the patent recognizes that where there is one destination for a trip, the points short of that destination are intermediate way points, thus suggesting that the destination is the non-intermediate way point.  The patent notes that "mobile unit 42 need not calculate an expected time of arrival at [intermediate] way points," which is wholly inconsistent with the district court's conclusion that the patent only covers expected time of arrival for intermediate way points.  [A27(9:39-43)]

The district court disregarded the teachings of the specification in arriving at its construction of "way point."  The district court's construction creates from whole cloth the concept of a "final" destination, which is nowhere in the claim language and not mentioned in the specification in the context of way points.

38

Nowhere does the specification distinguish between "intermediate" destinations and "final" destinations. Indeed, the term "final destination" only appears once in the specification, and it is used in a context wholly divorced from the discussion of way points. [A25(6:47-48)] Under these circumstances, the district court was wrong to exclude "final destinations" from "way points." *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367-68 (Fed. Cir. 2002) (reversing summary judgment of no infringement where the district court construed a term to limit its shape and number of constituent components where such limitations were not found in the specification or claims).

The district court was also wrong to rely on the Figure 2 example to limit the claims. The Figure 2 example discusses the use of way points in two different contexts. One involves the determination of whether vehicles are driving out of route during the trip, which can increase fuel and maintenance costs. [A26(8:66-9:5)] In describing the solution to this problem, the patent focuses on destinations C and D (which may be "way points"):

> To alleviate this problem, ***destinations C and D may be used as waypoints*** to determine whether the operator of vehicle has driven out of route specified in the destination information generated by the dispatch. Referring to FIG. 2, dispatch generates destination information specifying that vehicle is to proceed to destination E along route, thus passing through ***way points*** C and D.

[A27(9:5-12)(emphasis added)] As an initial matter, from this discussion there can be no dispute that "destinations" can be way points, and Appellees did not suggest

otherwise during the *Markman* proceedings.  In this out-of-route example, the specification states that destinations C and D can be used as way points, but does not say anything about destination E.  The reason is not because the inventors wished to exclude final destinations as the district court concluded.  Rather, destination E is not discussed in this example because the "final" destination itself cannot be used to indicate whether the vehicle is out of route on the way to the final destination.  In the example that is relevant to the claims—the determination of an expected time of arrival—the "final" destination would most certainly be used as a way point. *Verizon Servs. Corp. v. Vonoage Holdings Corp.*, 503 F.3d 1295, 1302-03 (Fed. Cir. 2007) ("The mere fact that the specification's examples of translation may involve a change in protocol from a higher to a lower level protocol does not establish that such a limitation should be imported into the claims" where none of the claims required it.).

By focusing on the out-of-route example, the district court's construction requires the mobile device to determine an expected time of arrival at points other than destinations, in contradiction of the specification's teaching that the "mobile unit need not calculate an expected time of arrival at these [intermediate] way points." [A27(9:41-43)]  The district court's construction also effectively excludes single-destination routes, and would thus exclude the preferred embodiment described in conjunction with Figure 1.  A construction that excludes the preferred

embodiment, as the district court's construction does here, "is rarely, if ever, correct." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007).

### 3.    Extrinsic Evidence Confirms that "Way Points" Include "Final" Way Points

The extrinsic evidence confirms that those in the field relevant to the '377 patent use "way point" in a manner consistent with Vehicle IP's construction. At the time of the invention, the meaning of "way point" was a "geographical point of reference or destination."

For example, the owner's manual for one of the first Garmin GPS navigation products (introduced in 1992) indicates that the device "displays the bearing and range from the nearest *waypoint*, which typically will be the ***destination*** of your last trip." [A1196, 1216 (emphasis added)]  Similarly, contemporaneous patent filings convey the same understanding of the term.  For instance, U.S. Patent No. 5,266,958 (issued on November 30, 1992 to Motorola) indicates that "the term 'waypoint' generally refers to a desired destination or navigational reference point to be reached, which may be a final destination or one of a series of intermediate destination or navigational reference points to be traversed." [A1310, 1315(1:36-40)]

Later technical sources show that the meaning of "waypoint" to a skilled artisan has not changed since the filing of the application for the '377 patent:

- The website waypoint.org, which serves as a GPS waypoint registry, defines "waypoint" as "a navigation fix. Usually a destination or point of reference." [A1326, 1327]

- Wikipedia defines "waypoint" as "a reference point in physical space used for purposes of navigation" and that "a waypoint can be a destination, a fix along a planned course used to make a journey, or simply a point of reference useful for navigation." [A1329]

*********

Because the claim language supports a broad construction of "way points," and because the specification and extrinsic evidence support that broad meaning, Vehicle IP respectfully requests that the Court reverse the district court's construction of "way point" and adopt Vehicle IP's construction: "a geographical point of reference or destination." Vehicle IP further respectfully requests that the Court vacate the district court's grant of summary judgment for the Clock-Time builds of the accused products, which was based on its incorrect construction.

## C. The District Court's Constructions of "Way Point" and "Expected Time of Arrival" Are Inconsistent with Each Other

The district court's constructions of "way point" and "expected time of arrival" cannot be squared with each other. First, in construing "time," the court relied centrally on the patent's discussion of comparing appointment times to an ETA. The court then limited "way points" to intermediate way points. But, even in the examples relied on by the district court, appointment times are only compared to destinations, including the last destination, not intermediate points.

Moreover, the patent indicates that intermediate way points "do not need an associated appointment time." [A27(9:39-43)]

Second, under the district court's constructions, the claimed system must not only calculate an expected time of arrival to intermediate way points (in contravention of the patent's express provision to the contrary [A27(9:39-43)]) but it must do so in a particular format. Such a requirement makes no sense for a "time" that will never be displayed to the user.

Thus, even aside from the problems identified above for each construction in isolation, the two constructions together cannot be reconciled.

## II.    The District Court Erred in Granting Summary Judgment of No Literal Infringement Under Its Incorrect Constructions

The asserted claims all require that the mobile unit be "operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination." After claim construction, Appellees moved for summary judgment on the basis that the accused products did not include that limitation or any equivalent.

In response, Vehicle IP presented strong evidence that the accused products meet this limitation, even under the district court's constructions. Specifically, Vehicle IP presented evidence that, through certain features, the accused products provide *intermediate* (i.e., non-final) destinations and determine the expected time of arrival in *time of day* format to those non-final destinations.

43

Despite this evidence, the district court found that the accused products did

not meet this claim limitation, and thus did not literally infringe, because "Confidential Ma

_____

Confidential Material Omitted

_____

Confidential Material Omitted        ."  [A13 (emphasis added)]   The district court's

determination was error because neither the claims nor the district court's claim

constructions limit the claims to a particular "route."

### A.    Certain Versions of the Accused Products Meet the Claim Limitations, as Construed

The limitation at issue requires that the mobile unit be "operable to

determine in response to the vehicle position the expected time of arrival of the

vehicle at a waypoint *identified by the destination information*."   The district

court construed the following terms in that phrase as follows:

> Determine in response to vehicle position: "determine based on the
> vehicle position and update as the vehicle changes position throughout
> the trip."

> Waypoint: "an intermediate point on the way to the final destination
> (and not the final destination itself)"

> Expected time of arrival: "time of day at which the vehicle is expected
> to arrive somewhere (and not remaining travel time)"

[A1467-68]  Accordingly, the limitation requires that the mobile unit be "operable

to [determine based on the vehicle position and update as the vehicle changes

position throughout the trip] the [time of day at which the vehicle is expected to

arrive] at [an intermediate point on the way to the final destination] identified by

the destination information."

Vehicle IP introduced evidence that certain versions of the accused products meet this limitation. The Telenav accused products provide "intermediate points on the way to the final destination" through their multi-destination and "Search Along" features, and the Clock Time builds of the TCS products provide such points through their "Find Nearby" feature. As explained below, for all of these intermediate points, the accused products determine the "time of day at which the vehicle is expected to arrive (and not a remaining travel time)" at the intermediate point.

The Telenav multi-destination feature generates time-of-day arrival times for intermediate destinations. It allows subscribers to create a trip with multiple destinations, such as a route from points "A" to "D" through destinations "B" and "C," which Telenav admits are "intermediate." [A3441, 3463-64(89:7-91:16); A2576, 2579-81(¶ 11); A3492-93] When the subscriber clicks a "Send to Phone" link, Confidential Material Omitted

Confidential Material Omitted                                    . [A3441, 3464-65(91:17-95:10); A2576, 2579-81(¶ 11)] When a user selects intermediate destinations "B" or "C," the Confidential Material Omitted" accused products determine an arrival time at the intermediate destination *in a time of day format*, and thus literally determine an

"expected time of arrival . . . at a way point" under the district court's construction. [A1944, 1946-47(¶¶ 8, 10); A2576, 2594(¶ 35)]

The Telenav "Search Along" feature and the TCS "Find Nearby" feature operate in a similar fashion as is relevant to this appeal. At the beginning of a navigation session, the accused products communicate navigation information to the mobile device Confidential Material Omitted

Confidential Material Omitted. [A1776, 1772(¶¶ 15-17); A2500, 2507-13(¶¶ 18-20, 25); A1942, 1946-47(¶¶ 8, 10); A2576, 2582-85(¶¶ 14-16), 2594(¶¶35-36)] Using the "Find Nearby" feature, the TCS products also send additional destination information for locations "Along My Route." [A2104, 2130, 2132(98:7-99:23, 106:5-15); A2500, 2507-10, 2513(¶¶ 18-20, 25)] For the Telenav "Search Along" feature, during navigation to a destination, the products generate information for intermediate destinations "Up Ahead" or "Near Destination." [A3341, 3457(64:13-65:4); A2576, 2582-85, 2594(¶¶ 14-16, 36)] For both features, when the driver selects one of these intermediate destinations, the mobile unit Confidential Material Omitted

Confidential Material Omitted determines an arrival time at the intermediate destination *in a time of day format*. [A1767, 1775(¶ 22); A2500, 2507-11(¶¶ 18-20, 25); A3441, 3457(64:13-65:4); A2576, 2582-85, 2594 (¶¶ 14-16, 36)]

The factual record further showed that the destinations provided by these features were "intermediate points along the way to the final destination." For

instance, for the Telenav multi-destination feature, Telenav's Chief Technical

Officer (CTO) admitted that destinations "B" and "C" in a route from points "A"

to "D" are intermediate destinations:

> Q.   Would you agree that B is an intermediate destination?
> A.   B is the first destination.  It's intermediate to D in the way it's created, in the way it was sequenced.
>
> <div align="center">* * * * *</div>
>
> Q.   Would you agree that C is also an intermediate destination?
> A.   In the way it's sequenced, yes.

[A3441, 3464(91:6-16)]  Further, Telenav's CTO provided his own example of the

"Search Along" feature, in which a driver starts a trip to San Francisco and then

using the feature to find a Starbucks along the way, and confirmed that Starbucks

was not a "final" destination:

> Q.   Would you agree, then, that the Starbucks is not the final destination?
> A.   The final destination.  It's not the destination he first chose.
>
> Q.   But would you agree that it's not the final destination?
> A.   The Starbucks is – in this particular – what you are describing, it's not the final destination.  But the one he put on the list first may not be the final destination either.

[A3441, 3459(73:9-20)]  This testimony was consistent with Telenav's products

and documents, which Confidential Material Omitted                         prompt the

driver with an option to "Resume Trip" once there.  [A3441, 3457(64:23-65:4);

A2576, 2582-85(¶¶ 14-16), 2594(¶ 36)]

TCS's corporate witness likewise provided an example of using the "Find Nearby" feature demonstrating that it provides "intermediate points along the way to the final destination."  In her example, the driver starts a trip to Disneyland, and then uses "Find Nearby" to download a list of gas stations along the way.  [A2104, 2131(104:21-105:6); A2500, 2510(¶ 19)]  After the driver selects one, the mobile device receives navigation instructions to the gas station, and determines an expected time of arrival to that intermediate point.  [A2104, 2131(104:21-105:6); A2500, 2510(¶ 19)]

Vehicle IP also submitted an extensive declaration from Dr. Steven Goldberg, an expert in navigation technology, regarding the features relevant to literal infringement.  Through his declaration, Dr. Goldberg explained, in detail, the operation of the accused products and concluded that the destinations provided by the Telenav multi-destination feature, the "Search Along" feature, and the "Find Nearby" feature were all "intermediate points along the way."  [*See* A2500, 2507-10(¶¶ 18-20, 25); A2576, 2582-85(¶¶ 14-16), 2594(¶ 36)]

## B.    The District Court Incorrectly Concluded that the Accused Products Do Not Literally Infringe

In light of the evidence presented by Vehicle IP, it is impossible to foreclose a jury from concluding that destinations "B" and "C" in the multi-destination feature, Starbucks in the "Search Along" example or the gas station in the "Find Nearby" example are "final" destinations.  Yet, that is exactly what district court

incorrectly did based on its rationale that Confidential Material Omitted

Confidential Material Omitted

[A13 (emphasis added)]

Neither the claims nor the Court's constructions, however, limit "destination information" to the current navigation route and exclude all other information received by the mobile unit.  Indeed, the limitation at issue itself provides that the claims relate to a "trip," not a "route."  Specifically, the district court construed the limitation to require the mobile device to be operable to determine ETA "based on the vehicle position and update as the vehicle changes position *throughout the trip*."  [A1468 (emphasis added)]

All that the claim requires is that the system determines an ETA to a way point "identified in the destination information."  [*See* A1467-68]  Destination information is in no way limited to a particular "route."  Instead, the specification provides that destination information includes information beyond the current "route":

> Dispatch 20 is remotely located from vehicle 40. One function of dispatch 20 is to generate ***destination information*** for vehicle 40. Such destination information may include one or more destinations, appointment information such as a corresponding appointment time for each destination specified, ***routing information***, information regarding tasks to be performed at each destination specified, average travel time to each destination, rush hour and traffic information, and weather information. Destination information may be any information generated by dispatch 20 that facilitates the control or monitoring of vehicle 40.

[A23(2:66-3:9)(emphasis added)]   Indeed, the specification specifically indicates

that "destination information relates to the "trip," not to the "route":

> During the trip, ***the preferred route may be shut down, additional
> destinations and corresponding appointment times may be added to
> the route, existing destinations and appointment times may be
> modified or deleted***, traffic and truck conditions may change, or any
> other event may compel dispatch 20 to send updated destination
> information to vehicle 40.

[A25(6:52-60)(emphasis added)]

Accordingly, the nature of the route guidance and the process through which

it is communicated has no bearing on the issue of infringement.   The Telenav

Servers generate destination information that includes "intermediate destinations"

(*e.g.*, Starbucks, destinations "B" and "C") and the mobile device is operable to

determine an expected time of arrival, formatted in "time of day," to those

destinations.   [A2576, 2582-85(¶¶ 14-16, 36); A3441, 3457-59(64:4-65:7, 67:7-

72:5); A3653, 3674-78, 3709]  Likewise, in the TCS products, the server sends the

mobile unit a navigation route with a destination and then a list of "intermediate"

destinations "Along My Route" that can be selected by the driver for navigation.

[A2104, 2131(104:3-105:6); A2500, 2507-10(¶¶ 18-20), 2513(¶ 25)]   Logically,

these destinations along the way cannot all be "final."   The claims require no more.

In sum, the district court's grant of summary judgment of no literal

infringement was not appropriate and should be reversed with respect to the Clock

Time builds of all of the accused products.

### III.    The District Court Committed Reversible Error in Finding Vitiation of "Expected Time of Arrival"

The district court further erred in finding no infringement under the doctrine of equivalents on a vitiation theory. All of the accused products determine a "remaining travel time" Confidential Material Omitted                              . There was no dispute below that these Confidential points are not final destinations and constitute "way points" under the district court's construction. There was also no dispute that the only "difference" between the literal scope of the claims and the accused products is the *format* of the expected arrival time. Vehicle IP thus presented factual and expert evidence that the differences between the two formats of time were insubstantial in the context of the claimed system.

The district court did not even consider Vehicle IP's evidence, let alone determine that the differences between the two formats were substantial. Instead, the district court incorrectly held that it could not apply the doctrine of equivalents because doing so would vitiate the negative parenthetical in its own construction. The court's holding was wrong on the law and the facts.

#### 1.    The District Court Improperly Found Vitiation Based Solely on the Literal Scope of the Claims And Wholly Divorced from the Insubstantial Differences Analysis

The district court's first error was in not letting the "insubstantial differences" test drive its vitiation analysis. The concept of vitiation derives from

the requirement that the doctrine of equivalents must be applied to the claims "on an element-by-element basis," so that every claimed element of the invention—or its equivalent—is present in the accused product. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). "Any analysis of infringement under the doctrine of equivalents necessarily deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp*, 149 F.3d 1309, 1317 (Fed. Cir. 1998). Accordingly, for vitiation to apply under the correct analysis, an equivalence theory must "eliminate a limitation in its entirety." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006). Vitiation is typically reserved for situations where the equivalent is the antithesis of the claim limitation. *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012).

Under the proper doctrine of equivalents inquiry, the court must ask whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element." *Warner-Jenkinson*, 520 U.S. at 40. In two recent cases, this Court has cautioned district courts "not to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *Brilliant Instruments, Inc. v. GuideTech*, LLC, 707 F.3d 1342, 1346-48 (Fed. Cir. 2013); *Deere*, 703 F.3d at 1354. Because, under the proper analysis, these are highly

factual inquires, "the test of the equivalence of a proposed substitute for a missing element is ordinarily . . . reserved for the finder of fact." *Deere*, 703 F.3d at 1354.

These cases illustrate how courts can improperly "shortcut" the doctrine of equivalents inquiry, as the district court did here.  In *Brilliant Instruments*, this Court reversed a grant of summary judgment of no infringement under the doctrine of equivalents where the district court construed the asserted claims to require the claimed 'first current circuit' and 'capacitor' to be separate elements, but the capacitor in the accused product was a component of the current circuit (i.e., they were ***not*** separate elements).  *Id*. at 7.  This Court reversed because the district court improperly ignored the patentee's expert testimony and other evidence of equivalence and, instead, based its decision on the fact that the equivalent substitute was outside the claimed limitation's literal scope.  *Id*. at 12.

Similarly, in *Deere*, this Court reversed a grant of summary judgment of no infringement under the doctrine of equivalents where the district court had construed the term "into engagement with" in the context of an upper and lower deck wall to mean "brought into contact with," but there was no "direct contact" between the upper and lower deck walls of the accused product.  *Id.* at 2, 4.  This Court found err in the conclusion that "no direct contact" between the upper and lower deck walls would vitiate the construction requiring "direct contact," because a reasonable jury could conclude that a connector that joined the upper and lower

deck walls "represents an insubstantial difference from direct contact." *Id*.

The district court's error here was similar to that in *Brilliant Instruments* and *Deere* cases. Specifically, the district court found vitiation, not because of a technical difference, but because the equivalent feature in the accused product (here, remaining travel time) was excluded from the literal scope of the claims:

> As the Court has construed the claims, "remaining travel time" is ***not*** equivalent to "expected time of arrival."

[A11] Thus, the district court set up the precise type of "binary" choice, in which an element is either present or "not present," cautioned against by this Court. *Deere*, 703 F.3d at 1354. In the district court's view, "no reasonable juror could conclude that remaining travel time is equivalent to the expected time of arrival limitation, given the Court's construction of that limitation as, in part, 'not remaining travel time.'" [A11]

The district court's analysis was wholly divorced from the "insubstantial" differences analysis, which is supposed to be the touchstone for considerations of vitiation. As in *Brilliant Instruments*, Vehicle IP submitted substantial evidence, including detailed expert declarations, showing that the differences between a "time of day" format and a "remaining travel time" format were insubstantial, and that those features performed the same function in the substantially the same way to reach the same result. [*E.g.*, A2500, 2513-2516(¶¶ 26-33); A2576, 2595-98(¶¶ 37-44)] Appellees did not submit any evidence to the contrary, choosing instead to

rely on the doctrines of vitiation, estoppel, and dedication. [*See* A1476, 1490-99; A1786, 1802-07] Nonetheless, like the court in *Brilliant Instruments,* the district court ignored this evidence and did not bother to actually compare the similarity of the remaining travel time and time of day formats, or to analyze the function, way, and result of those features.

Because the district court legally erred in looking solely at its literal construction of "expected time of arrival," and because its analysis consisted of a "binary" choice in which the missing element was either present or "not present" without considering the evidence, the district court's finding of vitiation should be reversed.

### 2.    The District Court Did Not Find that Remaining Time Would Vitiate a Limitation in Its Entirety—Only Part of the Court's Claim Construction

The district court's second legal error was in looking to vitiation of a feature in its claim construction, not as the law requires, to an entire claim limitation. For vitiation to apply under the correct analysis, an equivalence theory must "eliminate a limitation **in its entirety**." *DePuy Spine*, 469 F.3d at 1017 (emphasis added).

The relevant claim limitation here is:

the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information

[A30(claim 1)] There is no dispute that the accused products include the claimed

features in this limitation of "determin[img] in response to the vehicle position" and "at a way point identified by destination information." Thus, regardless of outcome of the "time" issue, vitiation is not a valid theory of noninfringement for this limitation.

The district court found vitiation of its own imported negative limitation, but that approach is legally erroneous because it ignores the requirement that vitiation looks to whether a theory of equivalence would "***eliminate [a particular claim] element in its entirety***" *Warner-Jenkinson*, 520 U.S. at 29 (emphasis added); *see also Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1330 (Fed. Cir. 2009) (no vitiation of "corners" element by equivalent "circular arcs" where equivalence theory did not "effectively ***eliminate that element in its entirety***") (internal quotation omitted) (emphasis added)).

Even focusing only on the "time" feature of the above limitation, there could not be vitiation because "remaining travel time" is not wholly antithetical "time of day"—they are simply different from each other. *Deere*, 703 F.3d at 1354 ("Vitiation is typically reserved for situations where the equivalent is the antithesis of the claim limitation."). Where the alleged equivalent is not ***antithetical*** to the claim limitation, there is no vitiation and the question of infringement is left for the jury. *See, e.g.*, *Cordis Corp.*, 561 F.3d at 1330 (finding that "circular arcs" were not antithetical to a "corners" limitation "even though the arcs could not 'form an

angle' as required by the claim construction"); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008) (finding no vitiation of the "substantially straight" limitation for an accused device with a "curved portion").

> **3.     There Is Not a Substantial Difference Between Determining "Remaining Travel Time" and "Time of Day" in the Context of the Asserted Claims.**

If it had considered the evidence submitted by Vehicle IP, the district court would have found that the "time of day" and "remaining travel time" formats are not substantially different in the context of the claimed invention. In reality, the difference between the two formats is minimal.

To start, a mobile unit can convert "remaining time" to "time of day" by simply adding or subtracting Confidential Material Omitted A3441, 3463-69(86:24-87:5, 110:6-111:9); A2576, 2597-98(¶¶ 41-44)]  Telenav's CTO testified that this kind of arithmetic is "middle-school stuff."  [A3441, 3469(112:3-8)]  Clearly, a person of ordinary skill in the art could program a computer to perform these calculations with ease.  [A3441, 3469(112:3-8); A2576, 2597-98(¶¶ 42-44)]

The operation of the accused products (and computers in general) further shows that these formats are equivalent.  Computers do not process time in formats such as "time of day" (i.e., HH:MM AM/PM) or "remaining time" (i.e., HHh:MMm).  [A2500, 2514-16(¶¶ 29-33); A3441, 3463-69(87:3-24, 110:3-112:8); A2576, 2588-89(¶¶ 24-25), 2596-98(¶¶ 40-44)]  Instead of this human-

readable format, computers convert the information into a format they can understand and process using common and well-known mathematical equations. [A2500, 2514-16(¶¶ 29-33); A3441, 3463-69(87:3-24, 110:3-112:8); A2576, 2588-89(¶¶ 24-25), 2596-98(¶¶ 40-44)]  In fact, the conversion to a "time of day" is so trivial that the Android and iPhone platforms for the accused products (as well as others) include standard utility programs that perform this routine function. [A2500, 2515 (¶ 31); A2576, 2589(¶ 25), 2597(¶ 41)]

The "format" of the arrival time is simply a function of which mathematical equations are applied in the conversion process.  The underlying information does not change—which is evident from the Appellees' own documents, Confidential Material Omitted

Confidential Material Omitted                                            [*See, e.g.,* A3534-35; A3536-39]  The interchangeability of these two formats is also evident from the fact that Appellees have used both for expected arrival times at destinations in the accused products.

Under nearly identical facts, this court found a patentee presented evidence on the question of equivalents that required resolution by a jury.  See *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 414 Fed. App'x 294, 300 (Fed. Cir. 2011) (non-precedential).   In *Alcohol Monitoring*, the plaintiff argued that claims requiring a "percentage" of transdermal alcohol content were equivalent to a product that measured a voltage that could then be converted to a percentage of

alcohol content using a simple mathematical formula. *Id*. In reversing a grant of summary judgment of no doctrine of equivalents infringement, the court concluded that a reasonable jury could find the voltage measurement equivalent to calculation of a percentage. *Id*. As in Alcohol Monitoring, the only difference here is the format of the expected arrival time, which can be converted using the same simple mathematical formula that the accused products use at destinations. The evidence shows that a "remaining time" and a "time of day" are equivalent. [*E.g.*, A2104, 2145-48 (159:18-162:16, 163:5-165:23;166:22-170:13); A2104, 2157(207:23-208:10); A2261, 2282-84(83:2-84:8, 86:19-88:5, 89:4-91:22); A2500, 2513-16(¶¶ 26-33); A2576, 2588-89(¶¶ 24, 25), 2595-98(¶¶ 37-44); A3441, 3463(86:24-87:5), 3469(110:6-111:9, 112:3-8)]

Accordingly, Vehicle IP respectfully requests that the Court reverse the district court's finding of no infringement under the doctrine of equivalents.

## CONCLUSION

For the foregoing reasons, Vehicle IP respectfully requests that the Court correct the district court's claim constructions for "expected time of arrival" and "way point." Vehicle IP further respectfully requests that the Court vacate the district court's grant of summary judgment.

Respectfully submitted,

August 5, 2013                    */s/ Geoffrey D. Biegler*
                                 William R. Woodford
                                 Michael J. Kane
                                 John A. Dragseth
                                 Fish & Richardson P.C.
                                 3200 RBC Plaza
                                 60 South Sixth Street
                                 Minneapolis, MN 55402
                                 Phone: 612-337-5070

                                 Geoff D. Biegler
                                 Fish & Richardson P.C.
                                 12390 El Camino Real
                                 San Diego, CA 92130
                                 Phone: 858-678-5070

                                 Counsel for Vehicle IP Inc.

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document

**BRIEF OF PLAINTIFF-APPELLANT VEHICLE IP, LLC**

has been filed and served on this 5th day of August, 2013, on the following:

David R. Clonts
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana, 44th Floor
Houston, TX 77002
*dclonts@akingump.com*

*Counsel for Appellees AT&T Mobility LLC
and TeleNav, Inc.*

☐ Via First-Class Mail
☐ Via Hand-Delivery
☐ Via Federal Express
☒ Via ECF and e-mail

Vincent J. Belusko
Morrison & Foerster LLP
707 Wilshire Blvd., Suite 6000
Los Angeles, CA 90017-3543
*vbelusko@mofo.com*

*Counsel for Appellees Cellco Partnership,
Telecommunication Systems, Inc. (TCS),
and Networks in Motion, Inc. (NIM)*

☐ Via First-Class Mail
☐ Via Hand-Delivery
☐ Via Federal Express
☒ Via ECF and e-mail

*/s/ Geoffrey D. Biegler*
Geoffrey D. Biegler

## <u>CERTIFICATE OF COMPLIANCE</u>

The Brief for Appellees complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).  The relevant portions of the Brief, including all footnotes, contain 13,700 words, as determined by Microsoft Word® 2010.

August 5, 2013

*/s/ Geoffrey D. Biegler*
Geoffrey D. Biegler
FISH & RICHARDSON P.C.
60 South Sixth Street
Suite 3200
Minneapolis, MN  55402
Telephone: (612) 335-5070
Facsimile:  (612) 288-9696

# Addendum

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEHICLE IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 09-1007-LPS |
| | : | |
| AT&T MOBILITY LLC, ET AL., | : | |
| | : | |
| Defendants. | : | |

## <u>JUDGMENT IN A CIVIL CASE</u>

At Wilmington this **19ᵗʰ** day of **April, 2013**.

For the reasons set forth in the Court's Memorandum Order dated April 10, 2013;

IT IS ORDERED AND ADJUDGED that judgment be and is hereby entered

pursuant to Rule 54(b) of the Federal Rules of Civil Procedure against Plaintiff and in favor of

Defendants TeleNav Inc., AT&T Mobility LLC, TeleCommunication Systems, Inc., Networks In

Motion, Inc., and Cellco Partnership.

_____
UNITED STATES DISTRICT JUDGE

_____
(By) Deputy Clerk

**A000001**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VEHICLE IP, LLC,                                    :
                                                    :
        Plaintiff,                        :
                                                    :
    v.                                           :
                                                    :    Civ. No. 09-1007-LPS
AT&T MOBILITY LLC, CELLCO                            :
PARTNERSHIP, NETWORKS IN MOTION, INC.,:    **FILED UNDER SEAL**
TELECOMMUNICATION SYSTEMS, INC.,                    :
TELENAV, INC., UNITED PARCEL SERVICE,   :
INC. and UPS LOGISTICS TECHNOLOGIES,                :
INC.,                                               :
                                                    :
        Defendants.                       :
                                                    :

## MEMORANDUM ORDER

At Wilmington this 10th day of April, 2013:

Pending before the Court are two motions for summary judgment of noninfringement of

U.S. Patent No. 5,987,377 ("the '377 patent"): (i) the motion ("TCS/Cellco Motion") (D.I. 177)

filed by defendants TeleCommunication Systems, Inc., Networks In Motion, Inc., and Cellco

Partnership (collectively, "TCS/Cellco"); and (ii) the motion ("Telenav/AT&T Motion") (D.I.

182) filed by defendants TeleNav, Inc. and AT&T Mobility LLC (collectively,

"TeleNav/AT&T"). Having reviewed the papers filed in connection with the motions, having

heard oral argument on May 18, 2012 (*see* Transcript of May 18, 2012 Hearing) (D.I. 225)

(hereinafter "Tr."), and, in light of the record and the Court's claim construction, the Court has

determined that there are no genuine issues of material fact and, thus, will GRANT the pending

motions.[1]

I.    **BACKGROUND**

Plaintiff Vehicle IP, LLC ("VIP") filed this patent infringement action against, *inter alia*,

defendants TeleNav/AT&T and TCS/Cellco on December 31, 2009, alleging infringement of the

'377 patent. (D.I. 1)  The Court held a *Markman* hearing on October 28, 2011.  *See* October 28,

2011 Claim Construction Hr'g Tr. (D.I. 163) (hereinafter "CC Hr'g Tr.").  The Court issued its

claim construction Opinion and Order on December 12, 2011.  (D.I. 167; D.I. 168)

The Court previously provided the following background with respect to the '377 patent

and relevant terms in its claim construction Opinion:

> The patent-in-suit is entitled, "Method and Apparatus for
> Determining an Expected Time of Arrival," and issued on
> November 16, 1999. The '377 patent is a continuation of an
> application that was filed in 1995, which ultimately issued as U.S.
> Patent No. 5,724,243 ("the '243 patent"), which is not asserted in
> this case. Both patents are directed at improving vehicle
> navigation systems through more efficient distribution of
> navigation functions between a mobile unit located in the vehicle
> and a remote dispatch, yielding a more accurate determination of
> expected time of arrival. The '377 patent claims a system in which
> a remotely located dispatch generates destination information for
> the vehicle, while a mobile unit determines vehicle position and
> calculates an expected time of arrival at a way point. The '377
> patent also claims use of a plurality of way points for a more
> accurate calculation of actual road distance to destination and,
> therefore, a more accurate expected time of arrival.
>
> Claim 1, which is representative of the '377 patent's use of
> all of the disputed terms, is reproduced below (with emphasis
> added to show the disputed terms):

---

[1]The parties have repeatedly, as recently as last month, updated the Court as to numerous
subsequent authorities, from the Federal Circuit and district courts, which they contend are (or
are not) pertinent to the matters under review. (*See* D.I. 234; D.I. 235; D.I. 236; D.I. 237; D.I.
238; D.I. 239; D.I. 240)

2

> A system for determining an ***expected time of arrival*** of a vehicle equipped with a mobile unit, comprising:
>
>> a ***dispatch*** remotely located from the vehicle, the ***dispatch*** operable to generate destination information for the vehicle, the destination information specifying a plurality of ***way points***;
>>
>> a communications link coupled to the ***dispatch***, the communications link operable to receive the destination information for the vehicle from the ***dispatch***; and
>>
>> the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the ***dispatch***, the mobile unit further operable to determine in response to the vehicle position the ***expected time of arrival*** of the vehicle at a ***way point*** identified by the destination information and wherein the communications link comprises a cellular telephone network.

(D.I. 167 at 1-2) (internal citations omitted).

## II.    LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

3

A000004

issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the

4

**A000005**

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## B.    Noninfringement[2]

"Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope of the claims, followed by (2) determination whether the properly construed claim encompasses the accused structure." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The first step, claim construction, is a matter of law for the Court. The claims in this case have been construed. (D.I. 167; D.I. 168) The second step of the infringement analysis – determining, element-by-element, whether each limitation of a claim is infringed, either literally or by application of the doctrine of equivalents – is a question of fact. *See Bai*, 160 F.3d at 1353.

To prove literal infringement, a party must show that the accused device possesses each and every element of the patent claim at issue. *See Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). Infringement is examined on an element-by-element basis; if an element of

---

[2]VIP asserts infringement by Defendants of "at least claims 1, 3-9, 12, 14-19, 21, 23, 25-30, 32, 35-38, 40-43, and 46-49" of the '377 patent. (D.I. 177 at 2 n.4; D.I. 197 at 3 n.1; D.I. 203 at 2 n.1)

5

the claim is not present in the accused device, then the device does not literally infringe the

claim. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310

(Fed. Cir. 2005). If the accused product includes all of the elements of a claim, or if the accused

product is an equivalent under the doctrine of equivalents, the patent remains infringed despite

any improvements or additional features in the accused product. *See Atlas Powder Co. v. E.I. du

Pont De Nemours & Co.*, 750 F.2d 1569, 1580–81 (Fed. Cir. 1984); *Northern Telecom, Inc. v.

Datapoint Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990).

  In order to establish infringement under the doctrine of equivalents, there must be an

insubstantial difference between the accused system and the corresponding element of the

patent-in-suit. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117

S. Ct. 1040, 137 L. Ed. 2d 146 (1997); *see also Corning Glass Works v. Sumitomo Elec. U.S.A.,

Inc.*, 868 F.2d 1251, 1260 (Fed. Cir. 1989) (patentee must prove accused device "does

substantially the same thing in substantially the same way to get substantially the same result")

(internal quotation marks omitted). As with literal infringement, infringement under the doctrine

of equivalents is analyzed on an element-by-element basis. *See Warner–Jenkinson*, 520 U.S. at

29, 117 S. Ct. 1040.

  The "all limitations rule" prevents application of the doctrine of equivalents when doing

so would vitiate a claim limitation. *See Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541

F.3d 1115, 1129 (Fed. Cir. 2008). In deciding whether a finding of infringement under the

doctrine of equivalents would vitiate a claim limitation, "the totality of the circumstances of each

case" must be considered so that a court may "determine whether the alleged equivalent can be

fairly characterized as an insubstantial change from the claimed subject matter without rendering

6

**A000007**

the pertinent limitation meaningless." *Id.*

When an accused infringer moves for summary judgment of non-infringement, such relief may only be granted if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005): *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of non-infringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement may only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue whether the accused product is covered by the claims. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## III.    DISCUSSION

By their motions, Defendants contend there is no genuine dispute that, given the Court's claim construction, there is no infringement, either literally or by equivalence. *(See generally* D.I. 177; D.I. 178; D.I. 182; D.I. 183; D.I. 213; D.I. 215) The Court agrees with Defendants.

### A.    TCS/Cellco Defendants

According to VIP, the targeted TCS/Cellco products ("TCS Accused Services") all determine an arrival time in seconds remaining at maneuver points and at destinations based on vehicle position. (D.I. 197 at 5-6) VIP further contends that different builds of these products convert the arrival time at destinations into different formats. *(See id.)* Based upon the conversion of arrival time into different formats, the products may then be sorted into two

7

categories: (i) "Clock-Time-Builds" (aka "ETA Builds"), which "convert the arrival time from

seconds into an 'HH:MM AM/PM' format (e.g., 10:45 PM);" and (2) "Travel-Time-Builds,"

which "convert the arrival time, including any traffic delay, from seconds into a 'remaining time'

in an 'HH:MM' format (e.g., 1:45 hrs)." (*Id.* at 6-7; *see also generally* D.I. 213)

### 1.    **Literal Infringement**

VIP contends that TCS/Cellco's "Clock-Time-Builds" literally infringe the asserted

claims through the "Find Nearby" or "Find A Place" feature. (*See* D.I. 197 at 1, 3-5, 9-10)

According to VIP, using this feature the "Clock-Time-Builds" literally determine an expected

time of arrival at an "intermediate" destination along the route (i.e., a "way point") in the "time

of day" format, aligning with the Court's construction. (*See id.* at 1, 9-10) VIP explains:

> While navigating to a destination, the driver can use the "Find
> Nearby" feature to search for and select "intermediate" destinations
> along the route, such as gas stations, restaurants, and ATMs.
> When the user selects the intermediate destination, the mobile unit
> receives modified directions to that destination and determines an
> arrival time at the intermediate destination in a "time of day"
> format.

(*Id.* at 3)

Because the '377 patent discloses a system and method "for determining an expected time

of arrival of a vehicle," however, and every claim requires the determination of an "expected

time of arrival of a vehicle at a way point," TCS/Cellco asserts literal infringement is impossible

because none of the services at issue actually make such a determination. (*See* D.I. 178 at 1, 9-

13) The Court agrees. Based upon the Court's construction, and given that the TCS Accused

Services do not support multiple-destination navigation (*see* D.I. 167; D.I. 168; D.I. 180,

Tsurutome Decl., ¶ 7; D.I. 181, Sheha Decl., ¶ 16), the targeted services do not "determine[] a

8

'time of day at which the vehicle is expected to arrive somewhere' (*i.e.*, an 'expected time of arrival') at 'intermediate point(s) on the way to the final destination' (*i.e.*, 'way point(s)')." (D.I. 177 at 1; *see also id.* at 1 nn.1-2; D.I. 178 at 9-13; D.I. 213 at 10-12)  Even to the extent any TCS/Cellco "ETA-Build"[3] uses an estimated time of arrival, or determines or displays an estimated time of arrival, this occurs only for the single final destination, not for a "way point." A "way point" is an "intermediate point[] on the way to the final destination (and not the final destination itself)." (D.I. 168 at 1-2)  As the record demonstrates, any estimated arrival time is calculated and displayed at the final destination only, but never at an intermediate point on the way. (*See* D.I. 180, Tsurutome Decl., ¶¶ 6-9; D.I. 181, Sheha Decl., ¶¶ 21-25, 36-37)

### 2.    Doctrine of Equivalents

VIP contends that the TCS Accused Services infringe under the doctrine of equivalents, as both the "Clock-Time-Builds" and "Travel-Time-Builds" calculate the remaining travel time to a "way point." (*See* D.I. 197 at 1, 3)  That is, both builds "determine arrival times at each turn or 'maneuver' in the route (again, 'way points') – but do so in a 'remaining time' format instead of 'time of day.'  The difference between these two formats involves a simple mathematical formula and is thus insubstantial." (*Id.* at 1; *see also id.* at 3, 5-6)  Under the doctrine of equivalents, in VIP's view, "remaining travel time" format is insubstantially different from a "time of day" format so as to be infringing. (*See id.* at 1, 3, 11-12)

_____

[3]VIP has suggested that Defendants developed a new feature called "My Trips" that would allow a user to plan a trip with multiple destinations. (*See* D.I. 197 at 7-8)  To the extent VIP alleges literal infringement by such a feature, the record does not support a finding that "My Trips" was implemented in any product. (*See, e.g.,* D.I. 178 at 4, 6, 12-13; D.I. 180, Tsurutome Decl., ¶¶ 11-17 and Exs. A-B; D.I. 198 Ex. 3, Sheha Dep., at 170-75; D.I. 198 Ex. 6, Tsurutome Dep., at 30-43; D.I. 213 at 12; D.I. 214 Ex. J, Goldberg Dep., at 94-95; Tr. at 16, 19-20, 87-88)

9

TCS/Cellco responds that a finding of equivalence would improperly vitiate the "expected time of arrival . . . at a way point" limitation as construed by the Court. *(See* D.I. 178 at 6, 14-15; D.I. 213 at 2-4)  The Court has construed "expected time of arrival" to mean "time of day at which the vehicle is expected to arrive somewhere *(and not remaining travel time)*." (D.I. 168) (emphasis added)  In Defendants' view, finding infringement under the doctrine of equivalents would vitiate the negative limitation – "and not remaining travel time" – expressly included in the Court's construction.  Notwithstanding Plaintiff's contention that vitiation cannot be decided on summary judgment due to the presence of genuine disputes of material fact *(see* D.I. 197 at 1-3, 14-16; D.I. 203 at 12-14), the Court agrees with Defendants.

As the Court has construed the claims, "remaining travel time" is *not* equivalent to "expected time of arrival."  That is the meaning of the Court's construction of "expected time of arrival" as "time of day . . . (and *not* remaining travel time)."  (D.I. 168 at 1) (emphasis added) The Court agrees with TCS/Cellco that concluding its accused services somehow equivalently satisfy the "expected time of arrival" requirement by determining "remaining travel time" at maneuver points on a route to the final destination would impermissibly vitiate the "expected time of arrival . . . at a way point" limitation.[4]

Here, as a matter of law, no reasonable juror could conclude that "remaining travel time" is equivalent to the "expected time of arrival" limitation, given the Court's construction of that limitation as, in part, "not remaining travel time." *See generally Deere & Co. v. Bush Hog, LLC,* 703 F.3d 1349, 1356 (Fed. Cir. 2012) ("Vitiation is not an exception to the doctrine of

---

[4]Given the Court's findings, the Court will not address Defendants' remaining arguments based upon other theories, including prosecution history estoppel and dedication to the public.

10

equivalents, but instead a legal determination that the evidence is such that no reasonable jury

could determine two elements to be equivalent.") (internal quotation marks omitted); *see also*

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) ("[T]he

concept of equivalency cannot embrace a structure that is specifically excluded from the scope of

the claims.") (internal quotation marks omitted). As "no reasonable jury could find

equivalence," the Court "must grant summary judgment of no infringement under the doctrine of

equivalents." *Id.*

### B. Telenav/AT&T Defendants

VIP accuses two products of Telenav/AT&T: (i) the "Navigator," which is a "personal

navigation product that provides mobile users directions to a desired destination along with the

expected time of arrival to that destination," but which does not support multiple-destination

navigation (D.I. 183 at 8-9; *see* D.I. 185, Rennard Decl., ¶¶ 4-5, 8; Tr. at 21); and (ii) the "Track

Premium," which is a fleet management system containing Navigator components, and which

also does not support multi-destination navigation (*see* D.I. 183 at 9-10; D.I. 185, Rennard Decl.,

¶¶ 11-18; Tr. at 21-22).

#### 1. Literal Infringement

Defendants contend that neither the Navigator nor the Track Premium product calculates

an "expected time of arrival" at a "way point" as those terms were construed here.

##### a. Navigator

With respect to Navigator, VIP contends two features literally infringe: (1) using the

Telenav website or Telenav Track, subscribers are able to create a trip with multiple destinations

(with the list of such destination addresses being communicated to the mobile device and then

11

being available for selection by the subscriber); and (2) using a "Search Along" feature, a user may request navigation instructions to a point of interest. (*See* D.I. 203 at 3-5, 8-9) According to VIP, both of these product features determine an "expected time of arrival" at intermediate destinations (i.e., way points). (*See id.* at 10)

Defendants respond that Navigator does not calculate the time of day that a vehicle is expected to arrive at a way point. (*See* D.I. 183 at 11) "While the current versions of Navigator calculate the time of day a vehicle is expected to arrive at a final destination, the Court has made clear that a final destination is not a way point." (*Id.* at 2) With respect to the website, Telenav/AT&T emphasizes that a user can select from his or handset only one destination or address at a time. (*See* D.I. 215 at 1, 3-6) Each time a new single destination is selected, a new route is created for that destination and the old route is discarded. (*See id.* at 4) Thus, according to Defendants, there is only one destination and, as a practical matter, one cannot create routes with intermediate points on the way to another destination. (*See id.* at 5)

The Court agrees with Defendants that, given the Court's construction of "expected time of arrival" and "way points," the record would not support a reasonable jury finding that Telenav/AT&T's products literally infringe the claims of the patent-in-suit. "Expected time of arrival" is not, within the context of the patent-in-suit, "remaining travel time." Likewise, a "final destination" is not, within the context of the patent-in-suit, a way point.

### b.    Track Premium

VIP contends that the Track Premium products literally infringe. (*See* D.I. 203 at 4, 9 n.4) Defendants deny infringement for essentially the same reasons as they do so with respect to Navigator: Track Premium contains the same navigation functionality as Navigator, making

12

Track Premium capable of handling only one destination at a time and only calculating and

displaying time of day for only that destination, and not also for a waypoint. (*See* D.I. 183 at 2,

16-17; D.I. 215 at 4) Just as with Navigator, the Court agrees with Defendants' analysis of the

literal infringement allegations regarding Track Premium.

### 2.    Doctrine of Equivalents

VIP accuses Navigator and Track Premium's navigation functionality of infringing under

the doctrine of equivalents, arguing that all of Telenav/AT&T's accused products determine a

"remaining travel time" to certain endpoints, which endpoints constitute "way points" under the

Court's construction, and that the products thereby determine an expected arrival time to these

way points. (*See* D.I. 203 at 10-14; *see also* D.I. 183 at 3, 16-17) VIP argues the "remaining

travel time" is equivalent to the "time of day" required by the "expected time of arrival" term,

and that the difference between a time of day format and a travel time format is insubstantial.

(*See* D.I. 203 at 10-12; *see also* D.I. 183 at 2-3, 11-12)

However, the Court agrees with Defendants, who observe that basic navigation capability

calculates *remaining* travel time to and between "maneuver nodes" on a route. A finding of

infringement by equivalence would vitiate the "expected time of arrival" limitation. (*Id*. at 3, 12-

13) Also, a "way point" is not a "final destination" within the meaning of the claims of the

patent-in-suit. Hence, the differences between the accused functionality and the patent claims are

not insubstantial. The Court will grant the Telenav/AT&T Defendants' motion for summary

judgment.

13

V.    <u>**CONCLUSION**</u>

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1.    The TCS/Cellco Motion (D.I. 177) is **GRANTED**.

2.    The Telenav/AT&T Motion (D.I. 182) is **GRANTED**.

_____
UNITED STATES DISTRICT JUDGE

14

**A000015**



US005987377A

# United States Patent [19]

## Westerlage et al.

[11]  **Patent Number:**   **5,987,377**

[45]  **Date of Patent:**   *Nov. 16, 1999

[54]  **METHOD AND APPARATUS FOR DETERMINING EXPECTED TIME OF ARRIVAL**

[75]  Inventors: **Kenneth R. Westerlage**, Fort Worth; **William C. Kennedy, III; William C. Saunders**, both of Dallas; **Dale E. Beasley**, Flower Mound, all of Tex.; **William L. Hoag**, Madison, Wis.

[73]  Assignee: **HighwayMaster Communications, Inc.**, Dallas, Tex.

[ * ]  Notice:  This patent is subject to a terminal disclaimer.

[21]  Appl. No.: **09/033,565**

[22]  Filed:  **Mar. 2, 1998**

### Related U.S. Application Data

[63]  Continuation of application No. 08/387,221, Feb. 10, 1995, Pat. No. 5,724,243.

[51]  Int. Cl.[6] .................................................. **G01Z 23/00**

[52]  U.S. Cl. ......................... **701/204**; 701/208; 701/213; 340/994

[58]  Field of Search ..................................... 701/204, 206, 701/207, 208, 213, 117, 118, 119; 340/989, 990, 994, 995

[56]  **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| Re. 34,034 | 8/1992 | O'Sullivan ................................. 379/59 |
| 3,518,674 | 6/1970 | Moorehead et al. ................... 343/112 |
| 3,680,121 | 7/1972 | Anderson et al. ............... 343/112 TC |
| 3,714,650 | 1/1973 | Fuller et al. ...................... 343/6.5 LC |
| 3,757,290 | 9/1973 | Ross et al. ............................. 340/23 |
| 3,789,409 | 1/1974 | Easton ............................... 343/112 R |
| 3,848,254 | 11/1974 | Drebinger et al. ................. 343/112 R |
| 4,053,893 | 10/1977 | Boyer ............................... 343/112 PT |
| 4,083,003 | 4/1978 | Haemming ............................. 325/6 |
| 4,107,689 | 8/1978 | Jellinek ........................... 343/112 TC |
| 4,152,693 | 5/1979 | Ashworth, Jr. ........................ 340/24 |

| | | |
|---|---|---|
| 4,177,466 | 12/1979 | Reagan .............................. 343/112 TC |

(List continued on next page.)

#### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 0242099 | 10/1987 | European Pat. Off. . |
| 0367935 | 5/1990 | European Pat. Off. . |
| 2193861A | 2/1988 | United Kingdom . |
| WO 8904035 | 5/1989 | WIPO . |

#### OTHER PUBLICATIONS

"Trimpack" Brochure, TrimbleNavigation, date unknown, 1 page.

James C. Reynolds, et al., "GPS–Based Vessel Positon Monitoring and Display System," IEEE, 1990, pp. 601–607.

R. DeSadaba, "Personal Communications in the Intelligent Network," *British Telecommunications Engineering*, vol. 9, Aug., 1990, pp. 80–83.

"GPS Navstar Global Positioning System User's Overview—YEE–82–009D," *Navstar Global Positioning System Joint Program Office*, Mar., 1991, pp. 1–164.

(List continued on next page.)

*Primary Examiner*—William A. Cuchlinski, Jr.
*Assistant Examiner*—Edward Pipala
*Attorney, Agent, or Firm*—Baker & Botts, L.L.P.

[57]  **ABSTRACT**

A system (10) for determining an expected time of arrival of a vehicle (40) equipped with a mobile unit (42) includes a dispatch (20) remotely located from the vehicle (40). The dispatch (20) generates destination information for the vehicle (40), the destination information specifying at least one destination. The mobile unit (42) includes a mobile communications device (90) to receive the destination information for the vehicle (40) generated by the dispatch (20). The mobile unit (42) also includes a positioning receiver (80) to determine a vehicle position. In response to the destination information received from the dispatch (20) and the vehicle position, the mobile unit (42) determines the expected time of arrival of the vehicle.

**52 Claims, 5 Drawing Sheets**



**5,987,377**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,222,052 | 9/1980 | Dunn | 343/112 R |
| 4,382,178 | 5/1983 | Mori | 377/17 |
| 4,428,052 | 1/1984 | Robinson et al. . | |
| 4,428,057 | 1/1984 | Setliff et al. | 364/521 |
| 4,435,711 | 3/1984 | Ho et al. | 343/389 |
| 4,445,118 | 4/1984 | Taylor et al. | 343/357 |
| 4,547,778 | 10/1985 | Hinkle et al. | 343/456 |
| 4,590,569 | 5/1986 | Rogoff et al. | 364/452 |
| 4,651,157 | 3/1987 | Gray et al. | 342/457 |
| 4,660,037 | 4/1987 | Nakamura | 340/990 |
| 4,688,244 | 8/1987 | Hannon et al. | 379/58 |
| 4,700,374 | 10/1987 | Bini | 379/60 |
| 4,728,959 | 3/1988 | Maloney et al. | 342/457 |
| 4,740,792 | 4/1988 | Sagey et al. | 342/457 |
| 4,742,357 | 5/1988 | Rackley | 342/457 |
| 4,750,197 | 6/1988 | Denekamp et al. | 379/58 |
| 4,754,465 | 6/1988 | Trimble | 375/1 |
| 4,774,670 | 9/1988 | Palmieri . | |
| 4,791,571 | 12/1988 | Takahashi et al. . | |
| 4,791,572 | 12/1988 | Green, III et al. . | |
| 4,799,162 | 1/1989 | Shinkawa et al. . | |
| 4,809,005 | 2/1989 | Counselman, III | 342/352 |
| 4,833,477 | 5/1989 | Tendler | 342/389 |
| 4,891,650 | 1/1990 | Sheffer | 342/457 |
| 4,897,642 | 1/1990 | DiLullo et al. | 340/825.06 |
| 4,907,290 | 3/1990 | Crompton | 455/56 |
| 4,908,629 | 3/1990 | Apsell et al. | 342/457 |
| 5,003,317 | 3/1991 | Gray et al. | 342/457 |
| 5,014,206 | 5/1991 | Scribner et al. . | |
| 5,025,253 | 6/1991 | DiLullo et al. | 340/825.06 |
| 5,032,845 | 7/1991 | Velasco | 342/457 |
| 5,043,736 | 8/1991 | Darnell et al. | 342/357 |
| 5,045,861 | 9/1991 | Duffett-Smith | 342/457 |
| 5,055,851 | 10/1991 | Sheffer | 342/457 |
| 5,068,656 | 11/1991 | Sutherland | 340/989 |
| 5,119,102 | 6/1992 | Barnard | 342/357 |
| 5,121,126 | 6/1992 | Clagett | 342/419 |
| 5,121,325 | 6/1992 | DeJonge | 364/442 |
| 5,131,019 | 7/1992 | Sheffer et al. | 379/39 |
| 5,142,281 | 8/1992 | Park | 340/991 |
| 5,155,490 | 10/1992 | Spradley, Jr. et al. | 342/357 |
| 5,166,694 | 11/1992 | Russell et al. | 342/457 |
| 5,172,321 | 12/1992 | Ghaem et al. | 364/444 |
| 5,208,756 | 5/1993 | Song | 364/449 |
| 5,223,844 | 6/1993 | Mansell et al. | 342/357 |
| 5,225,842 | 7/1993 | Brown et al. | 342/357 |
| 5,243,529 | 9/1993 | Kashiwazaki . | |
| 5,252,982 | 10/1993 | Frei | 342/357 |
| 5,270,936 | 12/1993 | Fukushima et al. . | |
| 5,293,163 | 3/1994 | Kakihara et al. | 340/995 |
| 5,299,132 | 3/1994 | Wortham . | |
| 5,317,323 | 5/1994 | Kennedy et al. | 342/457 |
| 5,323,322 | 6/1994 | Mueller et al. | 364/449 |
| 5,327,144 | 7/1994 | Stilp et al. | 342/387 |
| 5,334,974 | 8/1994 | Simms et al. | 340/990 |
| 5,365,516 | 11/1994 | Jandrell | 370/18 |
| 5,392,052 | 2/1995 | Eberwine | 342/357 |
| 5,392,458 | 2/1995 | Sasata et al. | 455/54.1 |
| 5,396,540 | 3/1995 | Gooch | 379/59 |
| 5,400,020 | 3/1995 | Jones et al. | 340/994 |
| 5,422,816 | 6/1995 | Sprague et al . | |
| 5,432,841 | 7/1995 | Rimer | 379/59 |
| 5,444,444 | 8/1995 | Ross | 340/994 |
| 5,463,554 | 10/1995 | Araki et al. . | |

## OTHER PUBLICATIONS

"U.S. Coast Guard Differential GPS" Brochure, *U.S. Department of Transportation, United States Coast Guard*, May, 1993.

"GPS Facts & Figures" Brochure, *U.S. Department of Transportation, United States Coast Guard*, May, 1993.

D. H. Alsip, J. M. Butler, and J. T. Radice, "Implementation of the U.S. Coast Guard's Differential GPS Navigation Service," *U.S. Coast Guard Headquarters, Office of Navigation Safety and Waterway Services, Radionavigation Division*, Jun. 28, 1993, pp. 1–10.

Don Burtis, "CDPD—A Bandwidth Optimization Technique for Cellular Telephones," *Computer Design's OEM Integration*, May, 1994, pp. 19–20.

"U.S. Coast Guard Bulletin Board System File 'FRP–DGPS,'" *U.S. Coast Guard*, Date Unknown, pp. 1–6.

Gene L. Schlechte, LCDR, "U.S. Coast Guard Bulletin Board System Document 'DESIGN.TXT'—Design Process for the United States Coast Guard's Differential GPS Navigation Service, " *U.S., Coast Guard, U.S. Coast Guard Omega Navigation System Center*, Date Unknown, pp. 1–21.

Kirk Ladendorf, "First In Flight—Using State–Of–The–Art Technology, Austin–Based Arrowsmith Technologies Establishes Itself As A Major Player In Nascent Technology–Supplier Market," *Austin American Statesman*, Jan. 30, 1995, 3 pages.



FIG. 1

FIG. 2



FIG. 3

FIG. 4

**U.S. Patent**          Nov. 16, 1999          Sheet 3 of 5          5,987,377



*FIG. 5*



*FIG. 6*



*FIG. 7*



*FIG. 8*

5,987,377

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# METHOD AND APPARATUS FOR DETERMINING EXPECTED TIME OF ARRIVAL

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation of Application Ser. No. 08/387,221, filed Feb. 10, 1995, now U.S. Pat. No. 5,724, 243, entitled "Method and Apparatus for Determining Expected Time of Arrival" by Kenneth R. Westerlage, Dale E. Beasley, William C. Kennedy III, William L. Hoag, and William C. Saunders, pending.-IN

## BACKGROUND OF THE INVENTION

Mobile communications technology has enjoyed substantial growth over the past decade. Many cars, trucks, airplanes, boats, and other vehicles are equipped with devices that allow convenient and reliable mobile communications using a network of satellite-based or land-based transceivers. Advances in this technology have also led to widespread use of hand-held, portable mobile communications devices.

Many customers of mobile communications systems desire an accurate determination of their expected time of arrival at a particular destination, and perhaps reporting of this time to a remote location. For example, a cellular telephone in a vehicle or carried by a person offers a convenient communication link to report expected time of arrival information. One method to determine an expected time of arrival uses the average travel time from a point of origin to a destination. This approach, however, may not be suitable for particular applications that require more accuracy and more frequent updates of an expected time of arrival.

Furthermore, transportation systems would benefit from a dispatching function that monitors and directs the travel route and expected time of arrival of its carriers. For example, dispatchers of long-haul or local vehicles desire a system that allows access to expected time of arrival information to make routing and dispatching decisions.

## SUMMARY OF THE INVENTION

In accordance with the present invention, the disadvantages and problems associated with previous techniques used to determine and report the expected time of arrival of a vehicle, person, or object at a particular destination have been substantially reduced or eliminated. One aspect of the present invention provides a system for determining an expected time of arrival that integrates positioning technology with an existing mobile communications infrastructure.

According to an embodiment of the present invention, a system for determining an expected time of arrival of a vehicle equipped with a mobile unit includes a dispatch remotely located from the vehicle. The dispatch generates destination information for the vehicle, specifying at least one destination. A communications link is coupled to the dispatch and receives the destination information for the vehicle from the dispatch. The mobile unit is coupled to the communications link and receives from the communications link the destination information for the vehicle generated by the dispatch. The mobile unit determines a vehicle position and, in response to the vehicle position, also determines the expected time of arrival of the vehicle at the destination identified by the destination information.

According to another embodiment of the present invention, a method for determining an expected time of

arrival of a vehicle includes generating destination information at a dispatch, specifying at least one destination and at least one appointment time. The destination information is transmitted to the vehicle. The vehicle position is determined at the vehicle. In response to the vehicle position, the expected time of arrival of the vehicle at the destination identified by the destination information is also determined at the vehicle.

Important technical features of the present invention include improving the accuracy of determining an expected time of arrival by using a positioning system. In particular, the positioning system provides information to a processor on the vehicle so that the processor may calculate the expected time of arrival based upon the actual position of the vehicle. Additionally, the expected time of arrival may be updated continuously throughout a trip. Another technical advantage includes sending information to the vehicle from a remote location, such as a dispatch. Such information may comprise one or more destinations and corresponding appointment times, route information, information regarding tasks to be performed or packages to be delivered at each destination specified, weather information, traffic updates, or other information. Other technical advantages of the present invention include generating late information when the vehicle determines it will not arrive at a destination at the corresponding appointment time. The present invention may also display this late information to the operator of the vehicle and transmit the late information to a remote location. Important technical advantages may also include reporting to the remote location that the vehicle is not being driven along a predetermined route. Other technical advantages are readily apparent to one skilled in the art from the following figures, description, and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the present invention and for further features and advantages, reference is now made to the following description taken in conjunction with the accompanying drawing, wherein like reference numerals represent like parts, in which:

FIG. 1 illustrates a system for determining an expected time of arrival at a single destination.

FIG. 2 illustrates a system for determining expected times of arrival at a plurality of destinations;

FIG. 3 illustrates an alternative embodiment of the system for determining expected times of arrival at a plurality of destinations;

FIG. 4 illustrates a display on a vehicle;

FIG. 5 is a schematic representation of a mobile unit;

FIG. 6 is a schematic representation of a dispatch;

FIG. 7 is a flow chart for determining an expected time of arrival at a single destination; and

FIG. 8 is a flow chart for determining expected times of arrival at a plurality of destinations.

## DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 illustrates a system 10 for determining an expected time of arrival of a vehicle 40 travelling from a point of origin A to a destination B. System 10 includes a dispatch 20, a host 25, a communications link 30, and vehicle 40 equipped with a mobile unit 42. System 10 provides an accurate expected time of arrival for vehicle 40 at destination B.

Dispatch 20 is remotely located from vehicle 40. One function of dispatch 20 is to generate destination informa-

5,987,377

3

tion for vehicle 40. Such destination information may include one or more destinations, appointment information such as a corresponding appointment time for each destination specified, routing information, information regarding tasks to be performed at each destination specified, average travel time to each destination, rush hour and traffic information, and weather information. Destination information may be any information generated by dispatch 20 that facilitates the control or monitoring of vehicle 40. As will be explained later in more detail, an important technical advantage of the present invention includes remotely sending information to vehicle 40 from dispatch 20.

System 10 may also include one or more hosts 25 remotely located from vehicle 40. In one embodiment, host 25 performs the management and control functions for one or more fleets of trucks. Therefore, system 10 may include many hosts 25 associated with trucking companies, delivery services, or other organizations with vehicles 40 equipped with mobile units 42. Host 25 generates destination information and transmits this information over a communications link to dispatch 20. Dispatch 20 collects destination information from several hosts 25 and transmits this information to vehicles 40. Therefore, dispatch 20 can generate destination information or route destination information generated by host 25. Alternatively, host 25 can transmit destination information to vehicles 40 over communications link 30. In essence, some of the functions performed by dispatch 20 may be distributed among several hosts 25. Host 25 can also receive communications, such as late information, from mobile unit 42 over communications link 30. For clarity, this description will focus primarily on the functionality of dispatch 20, but it is understood that host 25 can perform some or all of the functions performed by dispatch 20.

Communications link 30 is coupled to dispatch 20 and host 25 and allows communication between dispatch 20, host 25, and mobile unit 42 on vehicle 40. Communications link 30 may be any land-based or spaced-based communications system, such as a cellular telephone network. More specifically, communications link 30 comprises a mobile telecommunications switching office (MTSO) 32 coupled to dispatch 20 and host 25, and at least one transmitter site 34 associated with the cellular telephone network. Dispatch 20 or host 25 generates destination information and sends this information to MTSO 32. MTSO 32 routes the destination information to transmitter site 34. Transmitter site 34 then transmits the destination information to mobile unit 42 over a destination information stream 36. Destination information may be encoded using traditional data encoders, such as a modem or a dual tone multifrequency (DTMF) coder/ decoder.

Communications link 30 may be one or a combination of dedicated telephone lines, switched telephone lines, microwave communications links, satellite-based communications links, specialized mobile radio (SMR), enhanced specialized mobile radio (ESMR), a personal communications service (PCS), a citizen's band (CB), a dedicated radio system, such as those used by police and fire fighters, or any other suitable communications link that allows dispatch 20 or host 25 to transmit data to or receive data from mobile unit 42. Communications link 30 may also be an SS7 backbone link or similar network for linking land-line or cellular switches in a public switched telephone network (PSTN). Such a link allows components of the PSTN to share information for validation, roaming, billing, call routing, and other functions. Communications link 30 may also include intelligence to route information generated at dispatch 20, host 25, or mobile unit 42 to multiple selected sites.

4

Destination information stream 36 may be implemented in a control channel, paging channel, part of a seized voice or data channel, or overhead message stream currently implemented in cellular telephone technology. Presently, the control channel provides paging of incoming calls, hand-off instructions, and other features of the cellular telephone network, but may be modified by one skilled in the art to include transmission of destination information. Destination information stream 36 may also be implemented using any other analog or digital communications link between transmitter site 34 and mobile unit 42, whether or not the communications link requires seizing of a voice or data channel, and whether or not a data encoder is used. For example, destination information stream 36 may be part of a separate channel requiring mobile unit 42 to re-tune to destination information stream 36 transmitted from transmitter site 34.

Additionally, there are several developing technologies that may provide a convenient implementation of destination information stream 36. For example, cellular digital packet data (CDPD) technology allows integration of data and voice using the existing cellular telephone infrastructure. In a CDPD system, digital packets of data and analog voice segments share the same channel. Other developments in digital cellular communications, such as code division multiple access (CDMA) and time division multiple access (TDMA), allow digital data and digital voice signals to be interspersed on a communications channel. These technologies integrate digital data transmission in a communications link 30, and therefore provide a convenient implementation scheme for destination information stream 36.

Transmitter site 34 may send destination information to mobile unit 42 in one large packet or in several smaller packets interspersed with other data used for mobile communications. For example, the destination information may be packaged in existing, but unused, bytes of the overhead message stream or in a dedicated protocol. One possible implementation would place destination information in the extended protocol described in the EIA/TIA-533 mobile communications standard, which provides for bidirectional communication between transmitter site 34 and mobile unit 42.

Mobile unit 42 may continuously monitor destination information stream 36 transmitted from transmitter site 34. Furthermore, mobile unit 42 may alternatively tune between several destination information streams 36 from several transmitter sites 34 to determine the strongest signal, usually relating to the nearest transmitter site 34.

FIG. 1 shows mobile unit 42 on vehicle 40. The present invention contemplates mobile unit 42 being carried by all types of vehicles, including cars, trucks, airplanes, boats, barges, rail cars, truck trailers, on a person's body, along with a package, or any other movable object for which it is desirable to calculate an expected time of arrival.

Because mobile unit 42 is coupled to communications link 30, mobile unit 42 can communicate with dispatch 20. Mobile unit 42 receives the destination information generated by dispatch 20 for vehicle 40 over communications link 30. In particular, mobile unit 42 contains a mobile communications device 90 (FIG. 5) that receives destination information over destination information stream 36.

Mobile unit 42 may comprise an output device 104 (FIG. 5) operable to present visually or audibly the destination information to an operator of vehicle 40 once the information has been received by mobile unit 42. For example, referring to FIG. 1, output 104 displays destination infor-

5,987,377

<table>
<tr><td>5</td><td>6</td></tr>
</table>

mation that specifies a particular route 52 for vehicle 40 to follow from a point of origin A to a destination B. Once informed of this information, the operator may then drive along route 52.

Using a positioning system 45, mobile unit 42 determines the position of vehicle 40. Specifically, mobile unit 42 comprises a mobile positioning receiver 80 (FIG. 5) operable to receive positioning information from positioning system 45. Mobile unit 42 receives positioning information over positioning information streams 49 from a plurality of satellites 47. Mobile unit 42 then determines its position using information from positioning information streams 49. The positioning information comprises accurate satellite positioning information transmitted by satellites 47 and pseudorange data represented by the time of arrival of positioning information streams 49 to mobile unit 42.

Positioning system 45 is illustrated as a satellite-based radio navigation system, such as the NAVSTAR global positioning system (GPS). The description uses the NAVSTAR GPS as a representative positioning system 45, but any land-based or satellite-based system may be used. For example, positioning system 45 may be a land-based LORAN-C, a space-based GLONASS, a dead reckoning system, an inertial navigation system, or any other appropriate positioning technology. As shown in FIG. 1, positioning system 45 comprises a plurality of satellites 47. In general, positioning system 45 comprises a plurality of space-based or land-based transmitters that emit positioning information.

Satellites 47 maintain accurate and synchronized time and simultaneously transmit positioning information that contains satellite specific and system information required by mobile unit 42 to determine the position of vehicle 40. The positioning information transmitted by satellites 47 may include high precision clock and ephemeris data for a particular satellite, low precision clock and ephemeris data for every satellite in a constellation ("almanac data"), health and configuration status for all satellites, user text messages, and other parameters describing operation of positioning system 45.

Positioning system 45 may also comprise additional satellites and one or more positioning receivers. The additional satellites may also communicate positioning information to mobile unit 42. In one embodiment, a positioning receiver 50 may be mounted on transmitter site 34 to implement differential GPS techniques. Positioning receiver 50 generates correction data that enables mobile unit 42 to more accurately determine the position of vehicle 40. Positioning receiver 50 transmits the correction data to mobile unit 42 over any suitable link, such as destination information stream 36.

In response to the vehicle position, mobile unit 42 determines the expected time of arrival of vehicle 40 at the destination identified by the destination information 55 received from dispatch 20 over communications link 30. In calculating the expected time of arrival, mobile unit 42 may also consider such factors as the expected average speed of vehicle 40, the actual average speed of vehicle 40, the time of day during which vehicle 40 is traveling, the average time of a trip from origin A to destination B along route 52 based upon prior travel, weather conditions, and other information impacting the expected time of arrival calculation. Stationary intervals along the route may also impact the calculation of expected time of arrival. These stationary intervals may include mandatory driver rest periods, allocated time to perform tasks at a location, overnight stays, scheduled or

unscheduled maintenance, weigh-ins, or other intervals when vehicle 40 is not moving. The factors used to calculate expected time of arrival may be provided to mobile unit 42 from dispatch 20 or generated locally at vehicle 40. For example, mobile unit 42 may factor in delays due to weather conditions or mandatory driver rest periods that dispatch 20 is unable to predict.

Dispatch 20 can configure the interval of time between calculations of expected time of arrival by mobile unit 42. The calculation of expected time of arrival may also be continuous. As discussed below, this interval of time dictates how quickly dispatch 20 will be informed that vehicle 40 may be late in arriving at a particular destination. Furthermore, mobile unit 42 may transmit information on expected time of arrival even if it is determined that vehicle 40 will be on-time at the destination. For example, vehicle 40 may want to report to dispatch 20 a calculated expected time of arrival that is much earlier than the corresponding appointment time. In general, mobile unit 42 may initiate transmission of information to dispatch 20 based on calculation of late arrival, calculation of early arrival, a predetermined reporting interval, or other condition.

System 10 provides a more accurate estimate for expected time of arrival than currently available systems, and may provide these estimates near instantaneously or "on the fly." These estimates may consider the specifics of each trip, such as traffic, weather conditions, and the time of day during which vehicle 40 travels. In some applications, low frequency and low accuracy updates are sufficient. Other applications, however, require greater accuracy and higher frequency updates in near real-time. For example, the operator of a local delivery truck may require accurate, high frequency estimates of expected time of arrival to monitor scheduled activities. System 10 provides these high frequency updates without relying on off-vehicle computations. In addition, the same delivery truck may send lower frequency estimates of expected time of arrival or late information to a remote location, such as dispatch 20. These estimates may be sent at fixed time intervals, on-demand, or as a result of a predetermined reporting event.

System 10 supports the remote sending of destination information to vehicle 40 from dispatch 20. If destination information is only input into mobile unit 42 just prior to departure of vehicle 40 from its origin, mobile unit 42 only has available destination information that is current as of the moment of departure. Over a long-haul trucking route or an extended local delivery route, destination information may become outdated before vehicle 40 reaches its final destination. To remedy this problem, dispatch 20 can continuously update the destination information used by mobile unit 42 to calculate the expected time of arrival of vehicle 40 at one or more destinations. For example, at the moment of departure, destination information input into mobile unit 42 may include the preferred route for vehicle 40 and several destinations with corresponding appointment times. During the trip, the preferred route may be shut down, additional destinations and corresponding appointment times may be added to the route, existing destinations and appointment times may be modified or deleted, traffic and truck conditions may change, or any other event may compel dispatch 20 to send updated destination information to vehicle 40.

Furthermore, destination information is sent directly to mobile unit 42, rather than input by the operator of vehicle 40. Since the operator of vehicle 40 is not distracted from his main duty of driving vehicle 40, the risk of vehicle 40 being involved in an accident is reduced. Furthermore, any human error in inputting destination information into mobile unit 42 is substantially reduced.

5,987,377

7

Mobile unit **42** may also be configured to notify both dispatch **20** and an operator of vehicle **40** if there is a likelihood that vehicle **40** will be late in arriving at a destination. After mobile unit **42** has determined the expected time of arrival, mobile unit **42** compares this time to a corresponding appointment time specified in the destination information. If the expected time of arrival for vehicle **40** at the destination is later than the appointment time, mobile unit **42** generates late information that may include the expected time of arrival. The interval of time between expected time of arrival calculations dictates the accuracy of the late information. If the expected time of arrival is calculated more often, then dispatch **20** and the operator will more likely be notified sooner that vehicle **40** will be late. For example, suppose the interval between calculations is one hour. Further suppose that vehicle **40** breaks down just after mobile unit **42** has calculated an expected time of arrival. In this case, mobile unit **42** will not generate late information informing dispatch **20** that vehicle **40** will likely be late until almost a full hour has passed. Suppose, however, that the interval between calculations is fifteen minutes. In this case, dispatch **20** is informed sooner that vehicle **40** will probably be late.

The generation of late information is also configurable in several ways. Late information does not need to be generated in all instances where mobile unit **42** calculates the expected time of arrival to be later than the corresponding appointment time at a destination. For example, in most cases dispatch **20** should not be alerted if vehicle **40** will arrive at a destination one minute after the appointment time. Thus, dispatch **20** is operable to configure a delta time parameter, defined as the difference between the appointment time and a later expected time of arrival, based upon the importance of vehicle **40** arriving at a destination on or before the appointment time. Also, just because mobile unit **42** determines that the expected time of arrival of vehicle **40** is later than the appointment time after one calculation does not mean that vehicle **40** will definitely be late. Vehicle **40** may not be behind schedule the next time that mobile unit **42** calculates the expected time of arrival. Thus, dispatch **20** is operable to configure a failure count parameter, defined as the number of calculations of expected times of arrival in a row that are later than the appointment time. For instance, under a failure count of zero, late information will be sent to dispatch **20** the first time mobile unit **42** calculates that the expected time of arrival is later than the appointment time. Furthermore, dispatch **20** does not need to be notified continuously once vehicle **40** has fallen behind schedule. Rather, mobile unit **42** should only renotify dispatch **20** at intervals. Thus, a renotification interval parameter is configurable based upon how often dispatch **20** needs to be informed that vehicle **40** will probably be late. The delta time parameter, failure count parameter, renotification interval parameter, and other operating parameters can be sent from dispatch **20** to vehicle **40** as destination information.

System **10** allows parties to adjust for a late arrival. Mobile unit **42** transmits the late information to dispatch **20** over communications link **30**. Dispatch **20** may then act upon the late information. For example, dispatch **20** may inform parties at the destination that vehicle **40** will not make the appointment time, but rather will arrive at the expected time of arrival determined by mobile unit **42**. Mobile unit **42** may also transmit late information directly to the destination of vehicle **40**. Furthermore, mobile unit **42** may present the late information to the operator of vehicle **40** via output **104** (FIG. **5**). Once informed that vehicle **42** will not arrive at the destination at the corresponding

8

appointment time, the operator may take corrective action, such as making less stops. Additionally, mobile unit **42** may be configured to determine and display the average speed of travel required of vehicle **40** to arrive at the destination at the appointment time.

Mobile unit **42** can be configured to generate late information only if the expected time of arrival at the destination is later than the corresponding appointment time. Other systems that are used for monitoring vehicles provide constant updates on the vehicles. Most dispatchers, however, are not concerned about the exact position of a vehicle at every moment in route to its destination. Rather, dispatchers may be concerned only when a vehicle cannot reach its destination at the appointed time. In such a manner, mobile unit **42** substantially reduces or eliminates the expense of additional personnel, equipment, and communications costs needed to monitor vehicle **40**.

In system **10**, dispatch **20** allows monitoring of at least one vehicle **40** equipped with mobile unit **42**. A large company may operate dispatch **20** to monitor a plurality of vehicles **40** equipped with mobile units **42**. Smaller companies with more limited resources could pool together to either jointly operate dispatch **20** or employ an independent firm to operate dispatch **20**. It should be understood that the present invention contemplates any number and arrangement of dispatches **20** to monitor one or more fleets of vehicles **40**.

FIG. **2** illustrates a system **10a** for determining expected times of arrival at a plurality of destinations. More particularly, system **10a** as shown provides accurate expected times of arrival for vehicle **40** at destinations C, D, and E along route **52a** or destinations C', D', and E along route **52b**.

In this embodiment of the present invention, the destination information generated by dispatch **20** includes several destinations and corresponding appointment times. For example, the destination information may specify that vehicle **40** must be at: (1) destination C at 1:00 p.m., Feb. 1, 1995; (2) destination D at 4:00 p.m., Feb. 1, 1995; and (3) destination E at 10:00 a.m., Feb. 2, 1995. Based upon this and other destination information received from dispatch **20** over communications link **30** and from positioning information received from positioning system **45**, mobile unit **42** determines the expected times of arrival of vehicle **40** at destinations C, D, and E.

The operator of vehicle **40** may be required to perform some task, such as dropping off a delivery, at each of destinations C, D, and E. Vehicle **40** is scheduled to arrive at each destination by the corresponding appointment time specified in the destination information; otherwise, mobile unit **42** generates late information for each destination that vehicle **40** will not reach by the corresponding appointment time. For example, assume vehicle **40** arrived at the appointed time at destination C, but is now running late by an hour for destination D. Based on current vehicle position and other factors, mobile unit **42** determines the expected time of arrival at destination D and may also determine an expected time of arrival at destination E. If one or both of these expected times of arrival are after the corresponding appointment time, then mobile unit **42** generates late information for display to the operator and/or transmission to dispatch **20**. Dispatch **20** may then inform parties at destinations D and E that vehicle **40** will arrive at the expected times of arrival determined by mobile unit **42** for those destinations.

A problem that trucking companies have often faced is that operators of trucks, either intentionally or

5,987,377

9

unintentionally, drive considerable distances from their assigned routes. Because trucking companies must pay for the additional fuel and maintenance expenses associated with the increased mileage, these out-of-route miles are extremely costly to trucking companies. To alleviate this problem, destinations C and D may be used as way points to determine whether the operator of vehicle 40 has driven out of route 52a specified in the destination information generated by dispatch 20. Referring to FIG. 2, dispatch 20 generates destination information specifying that vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D.

Mobile unit 42 may be configured to update dispatch 20 when vehicle 40 has reached a way point. In this way, dispatch 20 may be notified that vehicle 40 is still in route. Suppose, however, that instead of following route 52a specified by the destination information, the operator of vehicle 40 drives along route 52b passing through points C′ and D′. Based upon the position information received from positioning system 45 and the destination information received from dispatch 20, mobile unit 42 determines that the expected time of arrival of vehicle 40 at way point C will be later than the corresponding appointment time. This will occur at some point along the path between A and C′, and most likely at the beginning of the path near A. Therefore, shortly after vehicle 40 takes the wrong route, mobile unit 42 generates late information, including the position of vehicle 40, to inform dispatch 20 and the operator of vehicle 40 of the out-of-route condition. Regardless of the operator's intentions, he may now correct his route in order to minimize the out-of-route mileage. At this point, dispatch 20 may update the destination information for mobile unit 42.

Besides reducing out-of-route mileage, the use of intermediate way points improves the calculation of expected time of arrival. Specifically, the actual distance between the position of vehicle 40 and the destination may not be the road distance. Way points may be used as intermediate points between the position of vehicle 40 and the destination in order to more accurately calculate actual road distance. If used for more accurate distance calculation, way points do not need an associated appointment time and mobile unit 42 need not calculate an expected time of arrival at these way points. Way points may be generated locally at mobile unit 42 using, for example, routing software or databases.

FIG. 3 illustrates an alternative embodiment of system 10a for determining expected times of arrival at a plurality of destinations, with particular application to local delivery or repair services. System 10b provides expected times of arrival for vehicle 40a at destinations L, M, N, O, and P, which define the expected route of vehicle 40a shown by the dotted line. Mobile unit 42 receives destination information generated by dispatch 20 through communications link 30. The operation of system 10b illustrated in FIG. 3 is best understood in reference to both FIGS. 3 and 4.

FIG. 4 illustrates a display 60 on vehicle 40a. Address column 64 includes at least one destination, appointment time column 66 includes at least one corresponding appointment time, and description column 68 includes at least one task to be performed at a destination. The letters in parentheses under column 62, not included in display 60, disclose the corresponding destinations in FIG. 3. Specifically, lines 1, 2, 3, and 4 in display 60 of FIG. 4 correspond to destinations M, N, 0, and P, respectively, shown in FIG. 3. In addition, expected time column 69 displays at least one expected time of arrival calculated by mobile unit 42. Display 60 may also display a map 67 showing the location of vehicle 40a relative to one or more destinations, a

10

predetermined route for vehicle 40a to follow, and any other information that may be useful to the operator.

In operation, dispatch 20 generates destination information for vehicle 40a. The destination information defines, for example, the delivery schedule for a local delivery service or an appointment schedule for a local service provider. The destination information may be based in part on an allocated amount of time to perform a task at a destination and the expected travel time between destinations. For example, dispatch 20 may allocate fifty-five minutes to repair a machine at destination M and five minutes to travel between destinations M and N. Thus, as shown on line 2 of display 60 in FIG. 4, dispatch 20 generates destination information for vehicle 40a that includes an appointment time of 9:00 a.m. at destination N by adding fifty-five minutes work time plus five minutes travel time to the 8:00 a.m. appointment time at destination M.

Dispatch 20 transmits the destination information to vehicle 40a over communications link 30. Destination information may also be loaded into mobile unit 42 using any suitable input device, such as a keyboard, a direct connection, or any suitable removable storage media.

In a particular example, the operator of vehicle 40a is a plumber who is at destination M, shown on line 1 of display 60. Destination N, shown on line 2 of display 60, is five minutes away from destination M, the time is now 9:10 a.m., and the operator has just finished repairing the machine, as shown under description column 68 of line 1. Mobile unit 42 determines the expected time of arrival of vehicle 40a at destination N to be 9:15 a.m. (as shown in expected time column 69 of line 2), based upon the destination information and the vehicle position. The appointment time for destination N, however, is 9:00 a.m. (as shown in appointment time column 66 of line 2). The late expected time of arrival is displayed to the operator, which may be highlighted, blinking, or in a different color to alert the operator. Moreover, mobile unit 42 has calculated the expected times of arrival at destinations O and P to be 10:45 a.m. and 11:45 a.m., respectively, (as shown in expected time column 69 of lines 3 and 4, respectively) based upon the estimated late arrival at destination N.

Mobile unit 42 generates late information and transmits it to dispatch 20. Dispatch 20 may inform the party at destination N that vehicle 40a will be late, or the operator of vehicle 40a may do so over mobile communications device 90 (FIG. 5). Dispatch 20 may modify the route for vehicle 40a in response to receiving late information, and transmit new destination information with updated routing information and appointment information.

FIG. 5 is a schematic representation of mobile unit 42. Mobile unit 42 includes mobile positioning receiver 80, mobile communications device 90, and other associated hardware and software, described below. Mobile positioning receiver 80 includes antenna 82, receiver 84, controller 86, and memory 88. In operation, mobile positioning receiver 80 receives positioning information from satellites 47 over positioning information streams 49 at antenna 82. Receiver 84 processes the positioning information to extract ephemeris, almanac, and clock correction data. Controller 86 receives the positioning information and computes a vehicle position. These calculations performed by controller 86 may use data stored in memory 88.

Mobile communications device 90 includes antenna 92, transceiver 94, and handset 96. In operation, mobile communications device 90 receives destination information at antenna 92 over destination information stream 36. The

A000027

5,987,377

11

destination information may be transmitted from dispatch 20 through communications link 30. More particularly, mobile communications device 90 receives destination information over destination information stream 36 transmitted from transmitter site 34 associated with the cellular telephone network. As described above, the destination information may be in a variety of forms, including one or more destinations, appointment information such as corresponding appointment times, routing information, weather information, average travel time between destinations, tasks to be performed at each destination, operating parameters, and other information. Destination information received by transceiver 94 may be passed to processor 100 over a link 95 or over any other appropriate path, such as through bus drivers 112 and a modem or dual tone multifrequency (DTMF) coder/decoder 110. Handset 96 provides traditional voice or data communications using mobile communications device 90.

Processor 100 manages the communicating, calculating, locating, and reporting features of mobile unit 42. In operation, processor 100 receives a vehicle position from controller 86 and destination information from transceiver 94. Processor 100 generates an expected time of arrival for vehicle 40 at a particular destination based on the vehicle position and the destination information.

Coupled to processor 100 is memory 102 which may contain programs, maps, databases, and other information required by processor 100 to perform its functions. Memory 102 may be random access memory (RAM), read-only memory (ROM), CD-ROM, removable memory devices, or any other device that allows storage or retrieval of data. Processor 100 and controller 86, as well as memory 102 and memory 88, may be separate or integral components of mobile unit 42. Mobile unit 42 contemplates any arrangement, processing capability, or task assignment between mobile positioning receiver 80, mobile communications device 90, and processor 100.

The expected time of arrival is sent to output device 104, such as display 60 in FIG. 4, to generate a table of destinations and corresponding expected times of arrival or, alternatively, a map displaying vehicle 40 and the destinations. Output device 104 also produces audible information, such as expected time of arrival updates or a late announcement, to the operator of vehicle 40.

Processor 100 is also coupled to input device 106, which may be a keypad or touch screen, as well as voice recognition software and hardware that can accept audible commands and information. Furthermore, both output device 104 and input device 106 may include fixed or removable storage media, such as magnetic computer discs, CD-ROM, or other suitable media to both receive output from and provide input to processor 100 or memory 102. Destination information may be provided to mobile unit 42 using input device 106. This can be accomplished by a direct connection with dispatch 20, audible or keypad input, or through removable storage media.

A feature of the present invention is that the operator of vehicle 40 may input information into mobile unit 42 when vehicle 40 is at one of its destinations. Using input device 106, the operator logs information about the load of vehicle 40, the weight of vehicle 40, the bill of lading, and any other item for which it is desirable to have a record. The operator may also enter the position of the particular destination based upon the position of vehicle 40 determined by mobile positioning receiver 80. The position of the destination may be stored in memory 102 along with an identification of that

12

destination. Dispatch 20 can then use the accurate position information for that destination in generating destination information for future trips. Also on future trips, mobile unit 42 can use this position information to more accurately calculate an expected time of arrival for that destination.

Processor 100 generates information for transmission to dispatch 20 using mobile communications device 90. The information may include late information, such as the expected time of arrival of vehicle 40 at a particular destination, the time of reporting, and the vehicle position, or information input by the vehicle operator, as well as any other information collected by processor 100 from various sensors 108. For example, sensors 108 may include various engine sensors, truck trailer sensors, security monitors, or other devices generating information on the status or condition of mobile unit 42, vehicle 40, or its operator. The generation and transmission of this information may be based on a late expected time of arrival, an elapsed time, movement of mobile unit 42, sensor readings, or any other piece of information that may necessitate reporting to a remote location. The information is sent from processor 100 through modem or DTMF coder/decoder 110 to bus drivers 112, and then to transceiver 94 for transmission over antenna 92 to a remote location, such as dispatch 20 (FIG. 6). Information may also be sent directly to transceiver 94 over link 95. Mobile unit 42 may also include a clock 116 coupled to processor 100 that may be used to synchronize the vehicle position received from controller 86 with destination information received from transceiver 94.

Components of mobile unit 42 shown in FIG. 5 may be packaged into one or more housings. Mobile unit 42 may be mounted to vehicle 40 or an object to be tracked. Mobile unit 42 may also be packaged as a portable, handheld device that provides personal timing, locating, communicating, and reporting functions. For example, a portable, hand-held mobile unit 42 may be used by police, fire fighters, rescue teams, service and delivery personnel, individuals that may change forms of transportation, or in any other application requiring portability of mobile unit 42.

FIG. 6 is a schematic representation of dispatch 20. Dispatch 20 includes a modem or DTMF coder/decoder 70, a central controller 72, a memory 74, an input/output device 76, and other associated hardware and software. Memory 74 may be RAM, ROM, CD-ROM, removable memory devices, or any other device that allows storage or retrieval of data. Input/output device 76 includes any variety of output devices, such as a display, a speaker to provide audible information, removable storage media, or any other appropriate output device. Input/output device 76 may also include a variety of input devices, such as a keyboard, mouse, touch screen, removable storage media, or any other appropriate input device.

Dispatch 20 generates destination information for one or more vehicles 40 carrying mobile units 42. In particular, destination information may be input into central controller 72 by a person manually using input/output device 76, by removable storage media, such as magnetic computer discs or CD-ROM, or any other suitable means to input information into central controller 72. The destination information may include one or more destinations, corresponding appointment times for each destination, predetermined routes, average travel times from one destination to another, tasks to be performed at each destination, operating parameters, and other information. The destination information is sent from central controller 72 through modem or DTMF coder/decoder 70 to communications link 30 for transmission by transmitter site 34 to mobile unit 42.

5,987,377

13                                      14

Alternatively, transmission of destination information from dispatch 20 may not require a data encoder.

Central controller 72 also receives information from mobile unit 42 and processes this information to determine expected time of arrival, locate, track, dispatch, and communicate with mobile unit 42. For example, central controller 72 can maintain a database in memory 74 of all mobile units 42 with their current expected times of arrival, location, status, and relevant sensor readings. This database can also be used to initiate communication with mobile unit 42. Furthermore, central controller 72 may perform a call delivery function that routes incoming calls to mobile unit 42 through communications link 30.

FIG. 7 is a flow chart for determining an expected time of arrival at a single destination. Initially, central controller 72 of dispatch 20 generates destination information (at 210), comprising a destination and corresponding appointment time, for vehicle 40 carrying mobile unit 42. The destination can be in a variety of forms, such as latitude/longitude, as well as a street address, town or city identifier, highway crossing, or other geographic monument or identifier that can be correlated with a latitude/longitude or other positional coordinate used by mobile positioning receiver 80. The destination information is sent from central controller 72 through modem or DTMF coder/decoder 70 to communications link 30, which transmits the destination information (at 212) to mobile unit 42 on vehicle 40. Mobile unit 42 receives the destination information via mobile communications device 90. Receiver 84 of mobile positioning receiver 80 processes positioning information received from satellites 47, and controller 86 determines a vehicle position (at 214).

Processor 100 receives the destination information from mobile communications device 90 and the vehicle position from mobile positioning receiver 80. Based upon this information and other information that may be contained within memory 102, processor 100 determines the expected time of arrival (at 216) of vehicle 40 at the destination specified in the destination information.

Processor 100 next determines (at 218) whether the expected time of arrival is later than the appointment time specified in the destination information received from dispatch 20. If the expected time of arrival is not later than the appointment time, mobile unit 42 will return to the step of determining vehicle position (at 214).

If the expected time of arrival is later than the appointment time, processor 100 generates late information (at 220). Processor 100 transmits the late information (at 222) to dispatch 20 using mobile communications device 90 and communications link 30. Processor 100 also displays late information (at 224) on vehicle 40 using output device 104 to inform the operator.

FIG. 8 is a flow chart for determining expected times of arrival at a plurality of destinations. Initially, central controller 72 of dispatch 20 generates destination information (at 310), comprising at least two destinations and corresponding appointment times, for vehicle 40 equipped with mobile unit 42. The destination information is sent from central controller 72 through modem or DTMF coder/decoder 70 to communications link 30, which transmits the destination information (at 312) to mobile unit 42 on vehicle 40. Mobile unit 42 receives the destination information via mobile communications device 90.

Processor 100 receives the destination information from mobile communications device 90. Processor 100 displays this information to the operator of vehicle 40 (at 314) using output device 104. Using the destination information, processor 100 initializes a destination and an appointment time (at 316) and resets a late flag (at 318). Receiver 84 of mobile positioning receiver 80 processes positioning information received from satellites 47, and controller 86 determines a vehicle position (at 320).

Processor 100 receives the vehicle position from mobile positioning receiver 80. By comparing the vehicle position to the destination, processor 100 determines whether vehicle 40 has reached the destination (at 322). If vehicle 40 has reached the destination, processor 100 sets the next destination and corresponding appointment time (at 324) specified in the destination information received from dispatch 20. If vehicle 40 has not reached the destination, processor 100 skips the step (at 324) of setting the next destination and corresponding appointment time. Based upon the vehicle position, the destination information, and other information that may be contained within memory 102, processor 100 determines an expected time of arrival (at 326) of vehicle 40 at one or more destinations. Processor 100 may generate multiple expected times of arrival for multiple destinations based on the current vehicle position.

Processor 100 next determines (at 328) whether the expected time of arrival is later than the corresponding appointment time. If the expected time of arrival is not later than the appointment time, mobile unit 42 will return to the step of determining vehicle position (at 320). If the expected time of arrival is later than the appointment time, processor 100 generates late information (at 330). Processor 100 displays late information (at 332) on vehicle 40 using output device 104 to inform the operator. Late information may be generated if any of the multiple expected times of arrival are later than their corresponding appointment times.

Processor 100 next determines (at 333) whether it should report the late information to dispatch 20, based upon a number of configurable operating parameters, such as the delta time parameter, failure count parameters, and renotification interval parameters. If late information is not reported, processor 100 returns to the step of resetting the late flag (at 318). If late information is reported, processor 100 transmits the late information (at 334) to dispatch 20 using mobile communications device 90 and communications link 30.

Dispatch 20 receives late information from mobile unit 42 (at 336) through communications link 30. Late information enters dispatch 20 through modem or DTMF coder/decoder 70 and passes to central controller 72. Central controller 72 may decide to update the destination information (at 338) and return to the step of generating destination information (at 310). If central controller 72 does not update the destination information, mobile unit 42 resets the late flag (at 318), either autonomously or in response to a signal from dispatch 20. The method continues by determining the vehicle position (at 320).

Although the present invention has been described with several embodiments, various changes and modifications may be suggested to one skilled in the art, and it is intended that the present invention encompass such changes and modifications as fall within the scope of the appended claims.

What is claimed is:

1. A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

    a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

5,987,377

15

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the communications link comprises a cellular telephone network.

2. The system of claim 1, wherein the communications link comprises a cellular telephone network.

3. The system of claim 1, wherein the way points comprise highway crossings.

4. The system of claim 1, wherein the destination information further comprises an expected travel speed along a predetermined route specified by the way points, the mobile unit operable to determine the expected time of arrival of the vehicle in response to the expected travel speed.

5. The system of claim 1, wherein the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points, the mobile unit further operable to determine the expected time of arrival of the vehicle in response to the traffic or weather information.

6. The system of claim 1, wherein the mobile unit comprises a GPS receiver to determine the vehicle position for use in determining the expected time of arrival.

7. The system of claim 1, wherein the mobile unit is further operable to select a next way point if the vehicle reaches a present way point.

8. The system of claim 7, wherein the mobile unit is further operable to communicate audibly information regarding the next way point.

9. The system of claim 1, wherein the mobile unit is further operable to display the way points on a map.

10. The system of claim 1, wherein the mobile unit is operable to communicate audibly the expected time of arrival.

11. The system of claim 1, wherein the destination information comprises an appointment time for each way point, the mobile unit further operable to compare the expected time of arrival to the appointment time.

12. An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the communications device comprises a cellular telephone.

13. The apparatus of claim 12, wherein the communications device comprises a cellular telephone.

14. The apparatus of claim 12, wherein the way points comprise highway crossings.

16

15. The apparatus of claim 12, wherein the destination information further comprises an expected travel speed along a predetermined route specified by the way points, the processor further operable to determine the expected time of arrival of the vehicle in response to the expected travel speed.

16. The apparatus of claim 12, wherein the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points, the processor further operable to determine the expected time of arrival of the vehicle in response to the traffic or weather information.

17. The apparatus of claim 12, wherein the positioning device comprises a GPS receiver.

18. The apparatus of claim 12, wherein the processor selects a next way point if the vehicle reaches a present way point.

19. The apparatus of claim 18, further comprising a speaker to communicate audibly information regarding the next way point.

20. The apparatus of claim 12, further comprising a speaker to communicate audibly the expected time of arrival.

21. The apparatus of claim 12, further comprising a display to display the way points on a map.

22. The apparatus of claim 12, wherein the destination information comprises an appointment time for each way point, the processor operable to compare the expected time of arrival to the appointment time.

23. A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the step of transmitting the destination information to the vehicle is performed using a cellular telephone network.

24. The method of claim 23, wherein the step of transmitting the destination information to the vehicle is performed using a cellular telephone network.

25. The method of claim 23, wherein the step of determining at the vehicle the vehicle position is performed using a GPS receiver.

26. The method of claim 23, wherein the way points comprise highway crossings.

27. The method of claim 23, wherein:

the destination information further comprises an expected travel speed along a predetermined route specified by the way points; and

determining the expected time of arrival comprises determining the expected time of arrival in response to the expected travel speed.

28. The method of claim 23, wherein:

the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points; and

determining the expected time of arrival comprises determining the expected time of arrival in response to the traffic or weather information.

29. The method of claim 23, further comprising the step of selecting a next way point if the vehicle reaches the way point.

5,987,377

17

**30.** The method of claim 29, further comprising the step of communicating audibly information regarding the next way point.

**31.** The method of claim 23, further comprising the step of communicating audibly the expected time of arrival.

**32.** The method of claim 23, further comprising the step of displaying the way points on a map.

**33.** The method of claim 23, wherein the destination information comprises an appointment time for each way point, and further comprising the step of comparing the expected time of arrival to the appointment time.

**34.** The method of claim 23, further comprising:

transmitting late information to the dispatch;

generating updated destination information at the dispatch in response to the late information; and

transmitting the updated destination information to the vehicle.

**35.** A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the way points comprise highway crossings.

**36.** A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points, the mobile unit further operable to determine the expected time of arrival of the vehicle in response to the traffic or weather information.

**37.** A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicles the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

18

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the mobile unit is further operable to select a next way point if the vehicle reaches a present way point and to communicate audibly information regarding the next way point.

**38.** A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicle, the destination information specifying a plurality of way points;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the mobile unit is operable to communicate audibly the expected time of arrival.

**39.** A system for determining an expected time of arrival of a vehicle equipped with a mobile unit, comprising:

a dispatch remotely located from the vehicle, the dispatch operable to generate destination information for the vehicles the destination information specifying a plurality of way points;

a communications link coupled to the dispatch, the communications link operable to receive the destination information for the vehicle from the dispatch; and

the mobile unit coupled to the communications link, the mobile unit operable to receive from the communications link the destination information for the vehicle generated by the dispatch, the mobile unit further operable to determine a vehicle position, the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the destination information comprises an appointment time for each way point, the mobile unit further operable to compare the expected time of arrival to the appointment time.

**40.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications

5,987,377

**19**

device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the way points comprise highway crossings.

**41.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points:

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the destination information further comprises traffic or weather information associated with a predetermined route specified by the way points, the processor further operable to determine the expected time of arrival of the vehicle in response to the traffic or weather information.

**42.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points,

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the processor selects a next way point if the vehicle reaches a present way point.

**43.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;

a positioning device operable to determine a vehicle position;

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information, the processor operable to select a next way point if the vehicle reaches a present way point; and:

a speaker operable to communicate audibly information regarding the next way point.

**44.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;

**20**

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning devices the processor operable to receive destination information from the communications device and the vehicle position from the positioning devices the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and further comprising a speaker to communicate audibly the expected time of arrival.

**45.** An apparatus on a vehicle for determining an expected time of arrival of the vehicle, comprising:

a communications device operable to receive destination information from a dispatch, the destination information specifying a plurality of way points;

a positioning device operable to determine a vehicle position; and

a processor coupled to the communications device and the positioning device, the processor operable to receive destination information from the communications device and the vehicle position from the positioning device, the processor further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the destination information comprises an appointment time for each way point, the processor further operable to compare the expected time of arrival to the appointment time.

**46.** A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information and wherein the way points comprise highway crossings.

**47.** A method for determining an expected time of arrival of a vehicles comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points and traffic or weather information associated with a predetermined route specified by the plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position,

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information in response to the traffic or weather information.

**48.** A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information; and,

5,987,377

21

selecting a next way point if the vehicle reaches the way point.

**49**. A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information

selecting a next way point if the vehicle reaches the way point; and,

communicating audibly information regarding the next way point.

**50**. A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information; and, communicating audibly the expected time of arrival.

**51**. A method for determining an expected time of arrival of a vehicle, comprising:

22

generating destination information at a dispatch, the destination information specifying a plurality of way points and an appointment time for each way point, transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position;

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information; and,

comparing the expected time of arrival to the appointment time.

**52**. A method for determining an expected time of arrival of a vehicle, comprising:

generating destination information at a dispatch, the destination information specifying a plurality of way points;

transmitting the destination information to the vehicle;

determining at the vehicle the vehicle position,

determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information

transmitting late information to the dispatch;

generating updated destination information at the dispatch in response to the late information; and

transmitting the updated destination information to the vehicle.

*    *    *    *    *

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| VEHICLE IP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civ. No. 09-1007-LPS |
| AT&T MOBILITY LLC, CELLCO | : | |
| PARTNERSHIP, NETWORKS IN | : | |
| MOTION, INC., | : | |
| TELECOMMUNICATION SYSTEMS, | : | |
| INC., TELENAV, INC., UNITED PARCEL | : | |
| SERVICE, INC. and UPS LOGISTICS | : | |
| TECHNOLOGIES, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

Thomas L. Halkowski, Esquire, of FISH & RICHARDSON, P.C., Wilmington, Delaware.
Michael J. Kane, Esquire, William R. Woodford, Esquire, Geoff D. Biegler, Esquire, and Jason
M. Zucchi, Esquire, of FISH & RICHARDSON, P.C., Minneapolis, Minnesota.

Attorneys for Plaintiff.

John W. Shaw, Esquire, and Pilar G. Kraman, Esquire, of YOUNG, CONAWAY, STARGATT
& TAYLOR LLP, Wilmington, Delaware.
Steven M. Zager, Esquire, David R. Clonts, Esquire, Carmen S. Pokluda, Esquire, Manoj S.
Gandhi, Esquire, and Michael F. Reeder, II, Esquire, of AKIN GUMP STRAUSS HAUER &
FELD LLP, Houston, Texas.
Ron E. Shulman, Esquire, and Richard G. Frenkel, Esquire, of LATHAM & WATKINS LLP,
Menlo Park, California.

Attorneys for Defendants AT&T Mobility, LLC and TeleNav, Inc.

John G. Day, Esquire, Tiffany Geyer Lydon, Esquire, and Andrew C. Mayo, Esquire, of ASHBY & GEDDES, Wilmington, Delaware.
Vincent J. Belusko, Esquire, Martin M. Noonen, Esquire, and Alex S. Yap, Esquire, of MORRISON & FOERSTER LLP, Los Angeles, California.

Attorneys for Defendants TeleCommunication Systems, Inc., Networks In Motion, Inc., and Cellco Partnership.

Jack B. Blumenfeld, Esquire, Rodger D. Smith II, Esquire, and Melissa L. Troutner, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, Delaware.
Robert L. Lee, Esquire, and Holly S. Hawkins, Esquire, of ALSTON & BIRD LLP, Atlanta, Georgia.

Attorneys for United Parcel Service, Inc. and UPS Logistics Technologies, Inc.

---

## MEMORANDUM OPINION

December 12, 2011
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff Vehicle IP, LLC ("VIP") filed this patent infringement action against Defendants

TeleNav Inc., and AT&T Mobility LLC (collectively, "TeleNav/AT&T"), TeleCommunication

Systems, Inc., Networks In Motion, Inc., and Cellco Partnership (collectively, "TCS/Cellco"), as

well as United Parcel Service, Inc., and UPS Logistics Technologies, Inc. (collectively, "UPS")

on December 31, 2009. (D.I. 1)  VIP alleges that Defendants infringe U.S. Patent No. 5,987,377

("the '377 patent"). (D.I. 1)[1]  Presently before the Court is the matter of claim construction.

Briefing on claim construction was completed on September 29, 2011. (D.I. 119; D.I. 120; D.I.

121; D.I. 135; D.I. 136; D.I. 138)  The Court held a *Markman* hearing on October 28, 2011. *See*

Claim Construction Hr'g Tr., October 28, 2011 (D.I. 163) (hereinafter "Tr."). Three terms are in

dispute.

## II.    BACKGROUND

The patent-in-suit is entitled, "Method and Apparatus for Determining an Expected Time

of Arrival," and issued on November 16, 1999. The '377 patent is a continuation of an

application that was filed in 1995, which ultimately issued as U.S. Patent No. 5,724,243 ("the

'243 patent"), which is not asserted in this case. Both patents are directed at improving vehicle

navigation systems through more efficient distribution of navigation functions between a mobile

unit located in the vehicle and a remote dispatch, yielding a more accurate determination of

expected time of arrival. (D.I. 123)  The '377 patent claims a system in which a remotely located

dispatch generates destination information for the vehicle, while a mobile unit determines vehicle

---

[1]References to the '377 patent are in the form of "col. ## ll. ##."

1

position and calculates an expected time of arrival at a way point. (D.I. 123) The '377 patent

also claims use of a plurality of way points for a more accurate calculation of actual road distance

to destination and, therefore, a more accurate expected time of arrival. (D.I. 121 at 7)

Claim 1, which is representative of the '377 patent's use of all of the disputed terms, is

reproduced below (with emphasis added to show the disputed terms):

> A system for determining an *expected time of arrival* of a
> vehicle equipped with a mobile unit, comprising:
>
> > a *dispatch* remotely located from the vehicle, the
> > *dispatch* operable to generate destination
> > information for the vehicle, the destination
> > information specifying a plurality of *way points*;
> >
> > a communications link coupled to the *dispatch*, the
> > communications link operable to receive the
> > destination information for the vehicle from the
> > *dispatch*; and
> >
> > the mobile unit coupled to the communications link,
> > the mobile unit operable to receive from the
> > communications link the destination information for
> > the vehicle generated by the *dispatch*, the mobile
> > unit further operable to determine in response to the
> > vehicle position the *expected time of arrival* of the
> > vehicle at a *way point* identified by the destination
> > information and wherein the communications link
> > comprises a cellular telephone network.

## III.   LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (internal quotation marks omitted). Construing the claims of a patent presents a

question of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir.

2

1995), *aff'd*, 517 U.S. 370, 388-90 (1996). "[T]here is no magic formula or catechism for conducting claim construction." *Phillips*, 415 F.3d at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one

3

party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003). It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman*, 52 F.3d at 980. The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

A court also may rely on "extrinsic evidence," which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such

4

dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243,1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbHv. Int'l Trade Comm'n*, 505 F.3d 1351,1358 (Fed. Cir. 2007). Thus, if possible, claims should be construed to uphold validity. *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

5

## IV.  CONSTRUCTION OF DISPUTED TERMS[2]

### A.  "expected time of arrival"

1.  VIP's construction: "an indication of time when the vehicle is expected to arrive"

2.  Defendants' Construction: "time of day in '[hour]/[minute] [a/p].m.' format at which the vehicle is expected to arrive somewhere (and not remaining travel time)"

3.  Court's Construction: "time of day at which the vehicle is expected to arrive somewhere (and not remaining travel time)"

The Court's construction is supported by the claims and specification. (*See* col. 7 ll. 59-

62; col. 8 ll. 58-62; col. 9 ll. 18-22, 55-65; col. 10 ll. 29-33; col. 15 ll. 44-47)  The term

"expected time of arrival" appears in all claims of the '377 patent, and neither the claims nor the

specification expressly define whether the term includes or excludes remaining travel time,

which is the crux of the dispute between the parties.[3]  It is presumed, "unless otherwise

compelled, that the same claim term in the same patent or related patents carries the same

construed meaning." *Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir.2003).

Here, the presumption is that the term in dispute carries the same meaning throughout the text of

the '377 patent and the related '243 patent. Claims 11, 22, 33, 39, 45, and 51 of the '377 patent

and all claims of the '243 patent require a comparison of the expected time of arrival to a

corresponding appointment time. For such comparison to be possible, the expected time of

---

[2]The parties also initially disputed the phrase "determine in response to the vehicle position" but, after the briefing was completed, submitted a joint proposed construction for the phrase: "determine based on the vehicle position and update as the vehicle position changes position throughout the trip." (D.I. 150)  The Court will adopt this agreed-upon construction.

[3]Defendants agreed at the oral argument that "expected time of arrival" may include "military time" (i.e. twenty-four hour format) in addition to their proposed "[hour]/[minute] [a/p].m." construction. *See* Tr. 91.

A001459

arrival must be in the same format as the corresponding appointment time. There is no support in the specification for Plaintiff's contention that appointment time can also be tracked as an interval of time.

The patentees used the term "expected time of arrival" consistently throughout the patent as a reference to a time of day rather than an interval of time. *See generally Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'"). Examples of such usage are: "Is expected time of arrival later than appointment time?" (Fig. 7); "dispatch 20 may inform parties at the destination that vehicle 40 will not make the appointment time, but rather will arrive at the expected time of arrival determined by the mobile unit 42" (col. 7 ll. 59-62); "[i]f one or both of these expected times of arrival are after the corresponding appointment time . . ." (col. 8 ll. 58-60); and "[m]obile unit 42 determines the expected time of arrival of vehicle 40a at destination N to be 9:15 a.m." (col. 10 ll. 28-30). None of these examples encompass both an interval of time and time of day.

Moreover, the specification mentions the "expected travel time between destinations" and "average travel time" in the context of destination information transmitted from the dispatch to the mobile unit. (*See* col. 10 ll. 6-9; col. 11 ll. 6-12; col. 12 ll. 59-64) Nowhere in the specification is "time or arrival" used interchangeably with "travel time." Again, the patentees used the term "expected time of arrival" to refer to a time of day, not to refer to an interval of travel time.

Both sides cite the prosecution history of the '243 patent and the initial rejection of all

7

claims as unpatentable over the U.S. Patent No. 5,444,444 ("the Ross patent"). (D.I. 121 at 15-16; D.I. 136 at 7-11)  Plaintiff argues that the Examiner understood the term "estimated time of arrival" to include both a time of day and an interval, supporting Plaintiff's view that the term has this plain meaning to a person having ordinary skill in the art. (*See* D.I. 121 at 16)  At the oral argument Plaintiff further argued that the Examiner equated the terms "expected time of arrival" and "estimated time of arrival." (*See* Tr. 24-25)  However, none of the excerpts cited by Plaintiff explicitly equate the two terms nor state that they include both a time interval and time of day. (*See* D.I. 122 Ex. D at VIP-ETA-0000314 to -315, VIP-ETA-0000337 to -338)  To the contrary, the patentees' response describes the Ross patent as follows: "If the period between the present time and the estimated time of arrival is less than a predetermined interval . . . ," which is consistent with the conclusion that patentees understood the term to mean a time of day rather than an interval. (D.I. 122 Ex. D at VIP-ETA-0000335)  While the Ross patent may be illustrative of what the plain meaning of "estimated time of arrival" was at the pertinent time, it does not address "expected time of arrival," the term used in the '243 and '377 patents.

Thus, the Court finds that "expected time of arrival" means a time of day, and does not include a remaining time interval.  However, the Court does not limit the construction to a specific "[hour]/[minute] [a/p].m." format, which would exclude the twenty-four hour format.

    **B.**    **"way point(s)"**

    1.    <u>VIP's Construction</u>: "geographical point(s) of reference or destination(s)"

    2.    <u>TeleNav/AT&T's and TCS/Cellco's Construction</u>: "intermediate point(s) on the way to the final destination (and not the final destination itself)"

    3.    <u>UPS's Construction</u>: "an intermediate point on the way to a particular destination"

8

4.    Court's Construction: "intermediate point(s) on the way to the final destination (and not the final destination itself)"

The question before the Court is whether a final destination is included in the term "way point." The Court finds that the language of the patent excludes a final destination from the definition of a way point.

The Court's construction is supported by the claims and the specification. (Col. 9 ll. 4-44) All independent claims of the '377 patent use the phrase "determine in response to the vehicle position the expected time of arrival of the vehicle at a way point." However, in the specification, the use of way points is discussed only for determining whether a vehicle is out of route and for more accurate calculation of actual road distance to destination. (Col. 9 ll. 5-8, 33-39)

The patent states that in a multiple-destination route (having destinations C, D, and E) "destinations C and D may be used as way points to determine whether the operator of the vehicle 40 has driven out of route 52a specified in the destination information." (Col. 9 ll. 6-8) Thus, the patent distinguishes between intermediate destinations C and D that can be used as "way points" on the route and destination E.

Elsewhere the patent states that a "[m]obile unit 42 may be configured to update dispatch 20 when vehicle 40 has reached a way point. In this way, dispatch 20 may be notified that vehicle 40 is still in route." (Col. 9 ll. 13-15) A vehicle that has reached the final destination is not "in route." This, again, supports the conclusion that the patentees did not include the final destination in the term "way point."

Additionally, the patent does not use the words "destination" and "way point"

9

synonymously. In the part of the specification that addresses multiple-destination routes, points

C and D are referred to as destinations (col. 8 ll. 28-65), while the part of the specification

describing use of way points distinguishes between a way point and a destination: "vehicle 40 is

to proceed to ***destination*** E along route 52a, thus passing through ***way points*** C and D." (Col. 9

ll. 9-11 (emphasis added))

The patent also uses the term "intermediate way points" in the context of more accurate

calculation of road distance to destination. (Col. 9 ll. 33-39) The qualifier "intermediate" is

added to refer to a way point which is used only for calculating actual road distance and which

does not require a calculation of expected time of arrival and does not have a corresponding

appointment time. (Col. 9 ll. 37-43) Moreover, such way points may be generated locally at the

mobile unit and not transmitted from the dispatch as part of the destination information. (Col. 9

ll. 43-44)

Plaintiff argues that excluding the final destination from the definition of a "way point"

means that the expected time of arrival is calculated for points other than destinations, and not

the destination itself. (D.I. 138 at 9) Plaintiff further argues that such construction excludes the

preferred embodiment. (D.I. 138 at 9) However, the '377 patent claims are directed at

determining expected time of arrival at a way point, while its parent patent '243 claims are

directed at calculating "the expected time of arrival of the vehicle at the destination." (*See, e.g.*,

'243 patent col. 15 ll. 10-11)

The parties have also argued that extrinsic evidence supports their respective

constructions. (D.I. 119 Ex. B, C; D.I. 138 at 12-13) While "it is entirely appropriate, perhaps

even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim

10

construction . . . is not inconsistent with clearly expressed, plainly apposite, and widely held

understandings in the pertinent technical field," *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182

F.3d 1298, 1308 (Fed. Cir. 1999), the extrinsic evidence supplied by the parties is conflicting and

does not prove one "widely held understanding" of the term "way point." The Court finds that

the intrinsic record sufficiently supports its construction and gives little weight to the extrinsic

references.

      C.    **"dispatch"**

      1.    VIP's Construction: "a computer-based communication and processing system remotely located from the vehicle"

      2.    Defendants' Construction: "a system that deploys vehicles to provide goods or services to destinations"

      3.    Court's Construction: "a computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles"

The term "dispatch" appears in all independent claims of the '377 patent. The parties

dispute whether it applies to any computer-based communication and processing system or

whether it has additional limitations relating to its functioning.

The Court's construction is supported by the claims (col. 17 ll. 12-17; col. 20 ll. 24-29;

col. 22 ll. 1-4, 25-30) and the specification (*see, e.g.*, col. 1 ll. 35-41; col. 2 l. 65 - col. 3 l. 8; col.

3 ll. 22-24; col. 8 ll. 17-26).

It is not disputed that a "dispatch [is] operable to generate destination information for the

vehicle." (Col. 14 ll. 64-66) Other claims further explain that destination information may

contain appointment times for way points (col. 17 ll. 8-11; col. 18 ll. 53-54; col. 20 ll. 24-29, col.

22 ll. 1-4); that a late expected arrival time may be transmitted to the dispatch (col. 17 l. 13; col.

11

22 l. 25); and that dispatch can generate updated destination information in response to the late information (col. 17 ll. 14-15; col. 22 ll. 26-27). It is presumed that "the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g.*, 334 F.3d at 1334. Because a dispatch is capable of generating destination information that includes appointment times, and is also capable of updating it in response to late information, it should be understood as a computer system that has vehicle management and monitoring functions, and not just any computer-based system remotely located from the vehicle.

The specification provides further guidance and support to the Court's construction. The patentees explained that the dispatching function "monitors and directs the travel route and expected time of arrival" (col. 1 ll. 35-37) and that "[d]estination information may be any information generated by dispatch 20 that facilitates the control or monitoring of vehicle 40" (col. 3 ll. 7-9). "[T]he present invention contemplates any number and arrangement of dispatches 20 to monitor one or more fleets of vehicles 40." (Col. 8 ll. 24-27) Dispatch is capable of modifying the route in response to late information and transmitting updated information to the vehicle. (Col. 10 ll. 43-50) This described functionality of the dispatch supports the conclusion that it is a computer-based system that has monitoring and vehicle management functions.

Plaintiff argues that monitoring and control is performed by a host, which is outside of the scope of the claimed invention, and not by the dispatch, which merely transmits destination information from the host to the vehicle. (*See* Tr. 50-51) But Plaintiff's contention is unsupported by the language of the claims – which states that "dispatch [is] operable to *generate* destination information" ('377 patent claim 1) (emphasis added) – and of the specification – which explains that "dispatch can *generate* destination information or *route* destination

12

information generated by host 25" (*id.* col. 3 ll. 22-24) (emphasis added). While a host may perform some of the functions of dispatch in some embodiments, this does not mean that dispatch is limited in the claims in the manner Plaintiff contends.

The Court concludes that its construction most accurately reflects the management and monitoring functions of dispatch while not limiting the disputed term to just its commercial embodiments.

## V.    CONCLUSION

An Order, consistent with this Memorandum Opinion resolving the parties' claim construction disputes, will be entered.

13

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VEHICLE IP, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| AT&T MOBILITY LLC, CELLCO | : |
| PARTNERSHIP, NETWORKS IN | : |
| MOTION, INC., | : |
| TELECOMMUNICATION SYSTEMS, | : |
| INC., TELENAV, INC., UNITED PARCEL | : |
| SERVICE, INC. and UPS LOGISTICS | : |
| TECHNOLOGIES, INC., | : |
| | : |
| Defendants. | : |
| | : |

Civ. No. 09-1007-LPS

### ORDER

At Wilmington, this 12th day of December 2011:

For the reasons set forth in the Memorandum Opinion issued this date,

**IT IS HEREBY ORDERED** that the disputed claim language of U.S. Patent No.

5,987,377 (the "'377 patent"), shall be construed as follows:

1.    **"expected time of arrival,"** as used in all claims of the '377 patent, is construed to mean "time of day at which the vehicle is expected to arrive somewhere (and not remaining travel time)."

2.    **"dispatch,"** as used in all claims of the '377 patent, is construed to mean "a computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles."

3.    **"way point(s),"** as used in all claims of the '377 patent, is construed to mean

"intermediate point(s) on the way to the final destination (and not the final destination itself)."

4.     **"determine in response to the vehicle position,"** as used in all claims of the '377 patent, is construed to mean "determine based on the vehicle position and update as the vehicle position changes position throughout the trip."

UNITED STATES DISTRICT JUDGE

2